Del Giorno, M.
The fire department, an agency of the City of New York, charges the defendant, who is an attorney, with maintaining a refrigerating system in his office at 401 Broadway, New York City, without a permit from the fire department, in violation of subdivision e of section C19-96.0 of the Administrative Code of the City of New York.
The refrigerating machine in question is a water cooler, containing less than 6 pounds of refrigerant. The water cooler is leased by defendant from the Crystal Spring Water Co., the water in which is supplied by five-gallon jugs, and the refrigeration of which is supplied by electricity connected into the current supplied by the building and paid for by the defendant.
The fire department, in its capacity of an enforcement agency, stresses its right to require a permit for the water cooler pursuant to the provisions of section C19-97.0 of the code. By virtue of those provisions, it claims the water cooler is a class C system. A class C system, intended but not specified by the parties herein, is one containing not more than six pounds of refrigerant. This is made clear in the amendment by a local law revising fees, approved July 9, 1952, and known as § C19-24.0.
It is agreed that the fire department makes no periodic or regular inspection of these water coolers. The questions involved are questions of law, the facts having been agreed upon. The court has ascertained from its own investigation that from three quarters of a pound to two pounds of refrigerant are generally used in a water cooler, depending on the make and type of water cooler, and one pound to possibly two in a household refrigerator; and in a home freezer of four cubic foot content, from three quarters of a pound to three or four pounds of refrigerant. These facts, although not necessarily pertinent to a decision, may, in our opinion, make clearer the reasoning.
While the fee required to be paid herein may seem small, nevertheless the principle involved is extremely important. There must be thousands of offices similarly situated as the defendant’s.
The pertinent parts of section 019-96.0 of the Administrative Code are as follows: “ § C19-96.0 Permits, a. Except as pro *33 vided in this article, it shall be unlawful to maintain or operate a refrigerating system without a permit, b. A permit will not be required for a class C system when maintained or operated in the residence portion of a dwelling containing not more than two families, or in the residence portions of either a tenement house, or a business building, c. It shall be unlawful to maintain or operate any refrigerating system employing a refrigerant other than those specified in this article without a permit issued upon such conditions, consistent with the provisions of this article, as are deemed by the commissioner necessary in the interest of public safety.” (Italics supplied.)
It goes without saying, and the defendant concedes it, that the People, that is the municipality in this case, have a right to pass such laws for the well-being, protection, and the advancement of its inhabitants, and prescribe for the enforcement thereof such requirements as a proper license or permit for which it may charge a reasonable fee. However, a very fundamental concept of our jurisprudence mandates that it do not discriminate against any group, class or portion of its citizens.
The defendant asserts that he is discriminated against, in that while the code makes unlawful the maintenance or operation of any refrigerating system in an office without a permit, it does not require a permit for a class C system when maintained or operated in the residence portion of a dwelling containing not more than two families, or in the residence portion of either a tenement house, or a business building. (Italics supplied.)
The defendant proclaims that he has the water cooler for the use of his small office and his clients, and that his water cooler is no more dangerous than the coolers or the usual refrigerators used in private homes, and that it does not involve the “ interest of public safety.”
With no little reluctance the court disagrees with the defendant. Whatever the reasons for passing this law, which not only exempts private dwellings of not more than two families, but also the residence portions of tenement houses and office buildings from the requirements of a permit for a refrigerator, a freezer, or even a water cooler, such reasons, in my opinion, seem tenuous, and to the lay mind may also seem discriminatory. The average citizen simply will not add to four that which does not seem to him to be two and two. How can one justify to such persons the imposition of this law to the small office of a lawyer, doctor, accountant, or a barbershop, or shoe repair shop, and not in a penthouse in a business building wherein the same defendant may have his office or store, or in a tenement house *34 wherein one thousand persons may dwell. All arguments, especially of a technical nature, or concerning the possible protection to life, will not convincingly satisfy the average person.
The court, nevertheless, may not base its conclusions upon its own or the average citizen’s doubt. Its duty is clearly to acknowledge the right of the municipality to pass such laws as this, and to determine if it is discriminatory, unconstitutional, or unfairly enforced.
We may then ask: “ Is this class legislation as contended by the defendant ” ? It is a well-settled rule of law that a statute is void as class legislation whenever persons engaged in the same business are subject to different restrictions or receive different privileges under the same conditions. (16 0. J. S., Constitutional Law, p. 967.)
The court is of the opinion that the defendant is not under different restrictions as those in his own class, for the exemptions from a permit herein are not to other lawyers, whatever the size of their offices, or doctors, or accountants, or the barber, or shoemaker, but to a residence or residence portion of any building, one of which may be occupied by the same defendant as a residence.
Let us remember that the city council has made a permit and a fee a mandatory requirement for the maintenance of a water cooler in all places where business is conducted. (Italics supplied.) The intent of the council must prevail, irrespective of the court’s doubts as to whether this section is susceptible of willing acceptance by the average citizen.
One may surmise that the Legislature intended: firstly, that all places wherein business for gain was conducted should be subject to the law and a payment of a reasonable fee; and secondly, that a fundamental distinction between a residence and a business place justified the exemption in favor of the first. It, in its wisdom, made the distinction, as appears herein, based upon the well-known fact that in a residence the mother is in general control of the assets therein; that she is exceptionally cautious as well as alert, and that she will see to it that danger of all kinds will be avoided because of the love she bears for those normally therein — her family.
On the other hand, such degree of basic protection is not engendered nor to be expected, where people are brought together only by the necessity of earning a living or for business, and where those in charge may change or be changed at will; and also, the number and type of public who enters can neither be restricted nor predicted.
*35 That is not discrimination, but protection, where it is most required. It is within the province of the municipality, and indeed, its solemn obligation, to enact laws which afford to its people the protection of health and life, and, where necessary, impose reasonable fees for the enforcement thereof. The contention made by the defendant that the fire department does not make any inspection does not affect the validity of the law. It may be a reflection of neglect of duty or, as more likely, lack of adequate personnel. That does not make the law invalid any more than failure to serve summonses on all parked cars would invalidate that phase of the traffic regulations.
Furthermore, while the court is aware that the determination of the Legislature as to what constitutes a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts, as contended by the defendant (Lawton v. Steele, 152 U. S. 133; People ex rel. Moskowitz v. Jenkins, 202 N. Y. 53) nevertheless a decision as to whether a water cooler is dangerous per se is solely within its province and may not be questioned by the court. (Penataquit Assn. v. Furman, 283 App. Div. 875.)
The issue of the constitutionality of this section was also raised by both sides, the People contending that this court is not the proper forum to pass upon the question. This court disagrees with this point of view. If it should feel that the statute here considered is arbitrary and unreasonable, or discriminatory, it would without hesitation class it so. We must not lose sight of the fact that in this case this court has sole jurisdiction. In our judicial system this court may be the bottom rung of the ladder, but that rung is very important to its strength. The manner in which this court will interpret its obligations as well as its prerogatives has a direct and powerful effect upon the whole ladder.
The court is obliged by its responsibility to the parties to question the validity of the laws that it administers. (People v. Mestichelli, 18 N. Y. S. 2d 406; People v. Marcello, 25 N. Y. S. 2d 533.)
The leading case of People v. Reed (276 N. Y. 5, 9) cited by the People to support its contention that the Magistrate’s Court is not a proper forum to question the constitutionality of this law in essence enjoins a lower court to pause and ponder whether there is a reasonable doubt on the law, and if so, to hold the statute valid; but it does not say under no circumstances hold the statute invalid or unconstitutional. That thought is most eloquently expressed by the court, when it states: 1 ‘ While the *36 defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to any reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, * * * The trial justices in criminal cases, therefore, should bear this in mind when ruling upon points of law ”.
The defendant contends that the rule set down in People v. Reed (supra) has no further application, since it has been changed by statute. With this contention, we disagree. In the case of People v. Goldstein (192 Misc. 337) the Appellate Part of the Court of Special Sessions refused to entertain an appeal by the People, since an appeal is granted by statute. It found that there was no statutory grant permitting appeals by the People. That court re-emphasized for the guidance of this court, the rule laid down in People v. Reed (supra).
On all the foregoing, the court finds that the statute is based upon real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed, that the statute is a valid exercise of the police power of the municipality, and that its enforcement is proper, and accordingly finds the defendant guilty as charged.