John P. Lomenzo, J.
The defendant is charged with a violation of subdivision 9 of section 14 of the Vehicle and Traffic Law in that he operated a motor vehicle upon the highway in excess of the weight limitations therein provided. The subject vehicle was equipped with pneumatic tires and tandem axles.
Section 14 of the Vehicle and Traffic Law provides: “ No person shall operate or move, or cause or knowingly permit to be operated or moved on any highway * * * any vehicle * * * of a size or weight exceeding the limitations provided for in this section.”
Subdivision 9 of section 14, for the type of truck operated by defendant, requires that the total weight shall not be more than 36,000 pounds. The charge here is that the defendant operated the subject vehicle with a total weight, 1,330 pounds, in excess of the statutory limitation.
The defendant did not own the truck, but operated the vehicle as an employee of the owner. On the day in question, July 20, 1956, pursuant to the instruction of his employer, he drove the vehicle to a quarry where the vehicle was loaded with building stone of small size. The defendant did not order the stone, nor did he control the loading or the amount of weight which had been previously ordered by his employer from the quarry. There is no proof that the truck when loaded was weighed at the quarry before departing for its destination, or for that matter, that there were any scales at the quarry for that purpose. After operating the vehicle for a few miles in the city of Rochester the defendant was stopped by the police who weighed the vehicle, ascertained the breach, and arrested the defendant. The defendant testified that as a result of operating the truck for a few miles from the quarry to the place where arrested, the original load distribution shifted. No proof was presented as to whether the load was unlawful originally or became unlawful due to the shift in the load distribution.
The main issue here is whether knowledge on the part of the operator-employee, of excessive weight, is a necessary element of proof to be established by the People before a conviction can be had under this section against him.
Generally the word “or” is used in a statute preceding a phrase or clause which is inserted to define that which precedes *46 the word. In its elementary sense, however, the word “ or ” as used in a statute, is a disjunctive particle indicating an alternative. It often connects a series of words or propositions, presenting a choice of either.
Applying this grammatical rule of construction to the subject statute and giving to it the full literal meaning of the words used, the following conclusions must be made, when each part of the statute is severed to ascertain the alternatives or choices available because of the disjunctive effect of the word “ or ”.
“No person shall operate or move * * * any vehicle * * * of a size or weight exceeding the limitations provided for in this section.”
It is clear that this “ choice ” or “ alternative ” does not require for conviction proof of knowledge of excessive weight on the part of the operator be he an owner-operator or employee-operator.
“No person shall * * * knowingly permit to be operated or moved * * * any vehicle * * * of a size or weight exceeding the limitations provided for in this section.”
It is equally clear that this ‘ ‘ choice ” or “ alternative ’ ’ applicable to persons other than the operator requires proof of knowledge of excessive weight on the part of persons who permit (allow) others to operate vehicles before such persons can be convicted of a violation of the subject section.
To hold an operator-employee guilty and to invoke the mandatory sentence provided, where as here he had no control over the loading, or scales provided or available to check weight, and had no knowledge of excess weight directly and was not chargeable with knowledge due to driving experience or reaction of the overloaded vehicle while being operated or other perceptive abilities which would reasonably establish a basis of proof upon which an inference of knowledge could be drawn, would lead to an unjust, unreasonable and irrational result, at variance with the policy of the legislation as a whole. This view is enforced by an examination of the second “ choice ” or “ alternative ” of the statute which requires proof of knowledge of excess weight before a conviction can be had against an employer-owner who controls and directs the loading of the vehicle directly, or as principal, who records, as he must, the weight ordered or shipped, and who is in the practical position to provide scale facilities to check weight. It is the employer-owner who in effect delivers a vehicle to the employee-operator with an illegal load and instructs him to operate it over the highways. If the provisions of the statute, in its literal significance, were the other way around and the condition of proof of knowledge *47 of excess weight made a precedent to conviction as to the employee-operator, upon whom the burden of ascertaining compliance is impractical and unjust, and not so as to the employer-owner who is in a position to easily ascertain compliance, the statute would make more sense and would be more just and equitable in its application and avoid an unwarranted hardship and a serious question of constitutionality.
The popular use of the word “ or ” is so loose and so frequently inaccurate, it has infected statutory enactments. For this reason its strict meaning is more readily departed from than that of other words. To give to the word “ or ” as used in the subject statute a disjunctive function thereby foreclosing any application of the word ‘ ‘ knowingly ” as it appears in the statute, to the operator-employee, would produce a result unintended by the Legislature. McKinney’s Consolidated Laws of New York (Book 1, Statutes, § 365) provides: “ The popular use of ‘ or ’ * * * is notoriously loose and inaccurate, and this use is reflected in the wording of statutes. When it is apparent that the Legislature has erroneously used the wrong word, the courts will make the necessary change in the statute in order that it shall conform to the legislative intent.”
This section also provides: “In fact, the courts are always justified in departing from the literal meaning of words when necessary to preserve the intent of the Legislature.”
To avoid an unintended result, a statute should be given a rational interpretation, consistent with achieving its purpose and with justice and common sense. (Matter of Drake v. Comptroller of City of N. Y., 278 App. Div. 317.) Statutes are not to be construed by strict and critical adherence to technical, grammatical rules. (Matter of Wing v. Ryan, 255 App. Div. 163, affd. 278 N. Y. 710.) A basic rule of statutory construction requires that a thing which is within the letter of the statute is not within the statute unless it be within the intention of the Legislature. (See, also, Matter of Barry Equity Corp. [Marcia Hat Co.], 276 App. Div. 685.) A court in reviewing and construing a statute will rule out an absurd and unexpected result which might arise from a literal interpretation of the language thereof and will give to the statute an effect to manifest the intention of the Legislature. (Matter of Chatlos v. McGoldrick, 302 N. Y. 380.) Courts have held that they may interpolate or transpose words, enlarge or restrain their meaning and even supply them if necessary to reach the legislative intent. (Travelers Ins. Co. v. Padula Co., 224 N. Y. 397; Matter of Austin, 109 Misc. 584; Matter of Bickerton, 232 N. Y. 1; Archer v. Equitable Life Assur. Soc., 218 N. Y. 18.) See, also, Stenson *48 v. Flick Constr. Co. (146 App. Div. 66), where the court in construing a penal statute, ascertained the intent of the Legislature by supplying as an element of required proof under the statute, knowledge on the part of the defendant where .the statute was devoid of any literal requirement of that element.
"Wherever possible a statute should be given such a construction when practically applied that will tend to suppress the evil which the Legislature intended to prohibit. On the other hand, it cannot be said that the object of the Legislature is accomplished by giving to a statute a literal meaning to the extent that in attempting to suppress an evil, its enforcement under such an interpretation creates a greater one. ‘ ‘ The courts will avoid a construction which is contrary to the fundamental principles of good conscience and morals.” (McKinney’s Cons. Laws of N". Y., Book 1, Statutes, § 141.)
It is therefore, the holding of this court that the Legislature did not contemplate nor intend to permit the conviction of an operator-employee of an overweight truck without proper proof of knowledge of the breach on the part of such person, or a basis upon which an inference of knowledge could properly be drawn. Proof of such knowledge is lacking here.
In People v. Rodenbach (204 Misc. 905, affd. 307 N. Y. 614) the court upheld the constitutionalitiy of section 14 of the "Vehicle and Traffic Law.
In so doing, the court adhered to the rule of statutory construction that requires it to shun consequences, without the legislative intent, such as hardship, injustice, oppressiveness and unconstitútionality. The court rejected a literal construction of the subject statute which would have produced these objectionable consequences and endanger the constitutionality of the law by holding that ‘ ‘ The distribution of a load on a vehicle, or the knowledge or lack of knowledge of the accuracy of scales on the part of the operator of said vehicle, are questions of fact and not of law.” (People v. Rodenbach, 204 Misc. 905, 909, supra.) In effect, the court applied the word “ knowingly ” that appears in the statute to the operator of the vehicle.
The enforcement of this law has for its purpose the preservation of State highways from damage by traffic too heavy for the surface, and to suspend the operation of overloaded trucks upon the highways to promote traffic safety. In its enforcement, the statute empowers any peace officer of this State who has reason to believe a load is unlawful, to stop such a vehicle, weigh it, and if a breach is found, compel the excess load to be removed at the expense of the owner. The expense of unloading and consequent loss due to the delay en route of such cargo to *49 its destination should provide a substantial deterrent to those in the trucking business. Under proper proof, convictions can be had not only of operators, but also owners and other persons contemplated within the statute. It is clear, therefore, that the view taken by this court as to the proper construction of section 14 of the Vehicle and Traffic Law does not render the law nugatory or incapable of enforcement. The object of the Legislature in suppressing the evil is in no way impaired or prevented. , .?)
The determination of excess weight in charging a violation of the statute herein was made by weighing the trucks by the use of scales known as Loadometers. The vehicle operated by the defendant was equipped with tandem axles. The police used two Loadometer scales and equalizing blocks and weighed first one axle and by interchanging these blocks and Loadometers then weighed the second axle. This procedure is not recommended by the manufacturer of the Loadometers and the capable expert for the People testified that this procedure in weighing vehicles equipped with tandem axles resulted in a variance of inaccuracy the maximum of which amounted to 4.6% either plus or minus of the total weight of the vehicle. Testimony further revealed that this variance was unpredictable to the extent that it could not be determined in a given case whether the inaccuracy was an indication of a weight in excess of the actual weight or less than the actual weight. The manufacturer of the Loadometer notified all users of the equipment to use four Loadometers instead of two in weighing vehicles with tandem axles and the use of four such scales reduces this variance to a maximum of 1.5%. This recommendation was included in the printed instructions sent to users of Loadometers which state the following: “ To properly weigh vehicles equipped with tandem axles it is necessary to use four Loadometers weighing all four wheels simultaneously. The sum of the four readings is the total weight of the tandem.”
The total weight charged against the defendant is 37,330 pounds. The maximum permitted under section 14 of the Vehicle and Traffic Law for the subject vehicle is 36,000 pounds. The total overweight charged is 1,330 pounds and well within the variance, allowed when two Loadometers instead of four are used, of 4.6% of the total weight. This court certainly cannot make a finding of unlawful weight beyond a reasonable doubt based upon some conjecture that possibly in this case the variance was minus instead of plus.
The defendant is acquitted.