Allen Murray Myers, J.
In this proceeding pursuant to section 217-a of the Judiciary Law, we are faced with the question of whether a bank, through its salaried in-house counsel, may recover a judgment for attorney’s fees as provided for in its consumer loan agreements in the event that the bank is forced to institute suit to collect an unpaid loan from a defaulting debtor.
The parties agree that section 108 of the Banking Law provides the answer. The pertinent provisions of section 108 are subdivisions 4 (par [c], cl [iii]) and 5 (par [e], cl [iii]). They *723 are almost identical and provide as follows: "The maximum rate of interest authorized by this subdivision shall be inclusive of all charges incident to investigating and making any loan. No fee, commission, expense, or other charge whatsoever in addition thereto shall be taken, received, reserved, or contracted for, except * * * (iii) the actual expenditures, including reasonable attorney’s fees for necessary court process”. (Subd 4, par [c], cl [iii].)
Although this statute has been on the books since 1937 (L 1937, ch 619; Banking Law, former § 108, subd 2, par [c], cl [2]) this issue has never before been raised.
Chemical Bank (Bank), the respondent, is one of the six largest banks in New York City operating a commercial banking business from over 180 branch offices in the New York City area. It makes three types of consumer loans: installment personal cash loans, Master Charge cash advance loans and checking account overdraft loans. Installment personal cash loans are made pursuant to the provisions of section 108 (subd 4, par [c], cl [iii]) of the Banking Law, and Master Charge cash advances and checking account overdraft loans are made pursuant to section 108 (subd 5, par [e], cl [iii]) of the Banking Law.
Borrowers are required to sign form agreements prepared by the bank. For personal cash loans, they sign a "consumer note” form; for credit card cash advances they sign a retail installment credit agreement; for checking account overdraft loans, they sign a revolving credit agreement.
Each of these form agreements contains a provision for the payment of "attorneys fees”[1] by the consumer in the event of suit by the bank to enforce and collect an unpaid loan which *724 is in default. The fees are 15% of the unpaid balance for cash loans and checking account overdraft loans and 20% of the unpaid balance for credit card cash advances.
On December 31, 1973, the bank had 300,617 outstanding consumer loans, totaling $219,076,000. By December 31, 1974, the . number of those loans outstanding had increased to 426,-850 and their total amount to $338,162,000. Of these loans, in 1973, $2,948,649 in consumer loans were in default for a period of more than six months. That amount had increased to $6,886,938 in 1974. Default judgments were obtained in over 90% of the cases encompassing these totals.
The bank commences approximately 12,000 cases per year in this court to enforce and collect defaulted consumer obligations. In 1973, 2,196 default judgments totaling $2,553,828, and in 1974, 2,710 default judgments totaling $3,286,087 were entered in this court. All of these judgments included a recovery for attorney’s fees of either 15% or 20% of the amount due depending on the type of consumer loan. The bank admits that it actually collected $154,000 in attorney’s fees in 1973 and $90,000 in 1974, but nowhere does it reveal the amount it had a right to collect pursuant to the default judgments entered herein (probably in excess of $800,000). Attorneys’ salaries amounted to $83,248 in 1973 and $52,205 in 1974. Thus the bank retained an excess of $70,752 in 1973 and $37,795 in 1974 plus uncollected judgments for much more. The bank’s books show that the excess of the moneys collected were allocated to the expenses of running the legal department such as salaries of clerks, typists, rent, furniture, stationery, computer services, etc., and that the legal department was run at a net loss.
The Administrative Judge of this court, at the request of the Attorney-General of the State of New York seeks to vacate the afore-mentioned default judgments in this proceeding pursuant to section 217-a of the Judiciary Law.
Section 217-a provides that a Judge in charge of the administration of any court, "upon a proper showing that default judgments were obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities” may bring a proceeding seeking to set aside such judgments and for prospective relief to prevent the entry of any such judgments in the future.
By seeking to recover and recovering attorney’s fees and *725 then keeping any attorney’s fees collected, the following violations are claimed:
(a) The bank has engaged and is engaging in the unauthorized practice of law in violation of section 495 of the Judiciary Law.
(b) The bank has engaged and is engaging in a misrepresentation by setting forth in its complaints against consumer debtors a specific item of recovery as attorney’s fees.
(c) The bank has engaged and is engaging in conduct violative of section 491 of the Judiciary Law and further has aided and abetted and has acted in concert with its salaried attorneys to engage in fee splitting in violation of canon 3 and disciplinary rule 3-102 of the Code of Professional Responsibility as approved by the American Bar Association and adopted by the New York State Bar Association.
(d) The bank is seeking to recover a charge in excess of the charges permitted by subdivisions 4 and 5 of section 108 of the Banking Law, thereby rendering said transactions usurious.
The answer alleges that the practices are proper because all fees are allocated to the legal collection department whose running expenses exceed the fees collected and that the practices are authorized by subdivision 5 of section 495 of the Judiciary Law and section 108 of the Banking Law. The defense based on subdivision 5 of section 495 of the Judiciary Law was apparently abandoned in the briefs and arguments of respondent’s counsel. The section merely authorizes a corporation to employ "an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may be a party.”
The material facts are not in dispute. Respondent has moved for summary judgment and petitioner has cross-moved for summary judgment. While the bank contends that its practices are consistent with the provisions of section 108 of the Banking Law, the petitioner claims that the bank’s interpretation of the law leads to unequal, unethical, illegal and discriminatory conduct. What then does section 108 really mean?
When the Legislature provided that "[n]o fee, commission, expense, or other charge whatsoever * * * shall be taken, received, or contracted for” it stated the policy that interest is meant to cover the general expenses of lending money and that no additional charges could be made as a subterfuge for *726 the charging of a higher rate of interest. An exception was created to permit the collection of the actual necessary expenditures for processing a case in court including a reasonable attorney’s fee.
The respondent contends that the statute authorizes it to recover attorney’s fees in each case although no actual attorney’s fees were paid for the services rendered in that particular case provided that it uses the sums so recovered towards defraying the expenses of its legal collection department.
This interpretation would render superfluous the words "fee” and "actual” in the statute. A "fee” is the sum charged by a lawyer for his services in the processing of a particular case. It is not an aliquot portion of an attorney’s annual wage nor is it an aliquot portion of the cost of running a corporate legal department. The word "actual” in the context of the statute, means the exact, same sum of money that was paid to - the lawyer for the necessary services rendered in processing a particular case. An attorney’s fee is presumed to encompass his overhead expenses. A surmise, conjecture or estimate of a fee is not the actual fee.
In construing a statute, "[Mjeaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 231.) Also, words are to be given their "usual and commonly understood meaning” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 232).
To accept the respondent’s practices as compliance with the statute would not give a meaning to every word and would not give every word its commonly understood meaning.
Another rule of statutory construction which would be violated by condoning respondent’s practice is the rule that statutes should be so interpreted as not to cause objectionable results (McKinney’s Cons Laws of NY, Book 1, Statutes, § 141). A statute should be interpreted to suppress any practices which the Legislature intended to prohibit and should be consistent with principles of good conscience and morals (People v Cubiotti, 4 Misc 2d 44). The respondent’s construction of the statute leads to unethical and illegal results.
The Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York has held that it is "a misrepresentation to label as 'attorney’s fees’ an amount which has no necessary relationship to the compensa *727 tion of the attorneys involved.” (The Record of the Assn of the Bar of the City of New York, vol 26, Opn No. 878, p 589.) It quoted with approval from Professor Henry S. Drinker’s treatise, Legal Ethics (Columbia Univ Press, 1953, pp 181-183) that if the bank pays over to the lawyer less than the full amount of the fee collected it would "in effect be hiring a lawyer to perform legal services for which the bank received compensation.” (The Record, supra, p 589.) As pointed out by Professor Drinker, a company, not authorized to practice law "which collects for its lawyer’s services a different sum from what it pays him is guilty of selling his professional services, which are being thus exploited in violation of canon 35. Here the lawyer is also aiding the * * * company in practicing law. Such is the case wherever 'a lay agency pays a lawyer one amount for his services and for these services charges a different amount to the person to whom they are rendered’ ”. (Drinker, p 182.) This would constitute the illegal practice of law in violation of section 495 of the Judiciary Law and the bank’s employee-lawyers who aided the bank would be in violation of present canon 3 and subdivision (A) of DR 3-101 which provides that, "A lawyer shall not aid a non-lawyer in the unauthorized practice of law.”
The committee also quoted with approval the opinion of the Committee on Professional Ethics of the Michigan Bar Association which held that a bank cannot retain sums paid for attorney’s fees in an amount greater than that actually paid to its lawyers for the particular service, and where the lawyers are not paid for the service but instead receive a flat salary the bank cannot collect attorney’s fees at all. (Emphasis supplied.) (See The Record of the Assn of the Bar of the City of New York, vol 26, Opn No. 878, p 589, supra.)
Professor Drinker further points out that these percentage charges for attorney’s fees may render transactions usurious when the amounts are "not actually used as a reimbursement for the bank’s actual legal expense in the particular case” [emphasis supplied] (Ibid, p 183; cf. Vee Bee Serv. Co. v Household Finance Corp., 51 NYS2d 590, affd 269 App Div 772).
In the Vee Bee case, a fee was charged to borrowers as a premium for "surety collateral.” While not a case of attorney’s fees it demonstrates the perniciousness of a practice permitting unaccounted for extra charges. The court held that (pp 605, 604),
*728 "The only services which can be charged to a borrower by the lender are those actually and reasonably incurred in good faith on behalf of the borrower and in connection with his particular loan. A lender may not exact extra charges from the borrower beyond the statutory rate, to reimburse it for a part of its general overhead expenses of carrying on its lending business.”
"An otherwise lawful requirement necessitating an expense to a borrower ceases to be lawful and becomes usurious when required by the lender under a plan or scheme whereby the lender intends to and does receive (directly or indirectly) a return or advantage of value, flowing from the borrower’s payment therefor, in addition to the maximum legal rate of interest. The otherwise lawful requirement paid for by the borrower cannot be used as a cloak to conceal excessive interest received by the lender in any form or disguise.”
Thus the collection of attorney’s fees without paying them over on a per case basis to an attorney permits the bank to collect extra moneys not otherwise allowable by statute.
The very operation of the legal department demonstrates the evil sought to be avoided. The respondent utilized printed uniform forms of summonses, complaints, and default judgments. Only the name of the borrower, dates and amounts differed in each case and had to be inserted on the forms. Paragraph numbered 6 of the respondent’s uniform printed complaint reads as follows: "Pursuant to the terms of the note, an additional sum of 15% of the balance thereof has become due and payable as attorneys fees as set forth in said statement.” Where the complaint was based on a retail installment credit card agreement, Paragraph 6 substituted the words, "agreement” for "note” and "20%” for "15%”. In no case did the respondent allege that it actually expended a particular sum in payment of an attorney’s fee to process the afore-mentioned papers in that particular case or furnish any proof that such fee was reasonable and necessary. If the respondent had retained outside counsel to process its 2,196 default judgments in 1973 and 2,710 in 1974, all by filling out identical printed forms, the fee would have to be, the same in each case because the necessary legal services were identical. A fee of $50 would give a lawyer gross fees of $110,000 in 1973 and $135,500 in 1974, mainly for having his typist fill out forms. Undoubtedly many competent lawyers would be willing to undertake such business for much less. Yet this respondent *729 routinely charged and recovered default judgments of 15% and 20% of the balance due. For instance, on a $10,000 loan this would amount to $2,000 or $1,500, a rate so far in excess of what is reasonable as an attorney’s fee for a default judgment that it could only be construed as a hidden charge to avoid the usury laws.
Respondent’s practice also leads to discriminatory and unequal results which would render the enabling statute unconstitutional.
In 1957 the Legislature enacted subdivision 5 of section 413 of the Personal Property Law (L 1957, ch 599). That section refers to the regulation of retail installment sales. It provides in pertinent part that, "the credit agreement may provide for the payment of attorney’s fees not exceeding twenty per centum of the amount due and payable under the credit agreement if it is referred to an attorney not a salaried employee of the seller or holder for collection.” (Emphasis supplied.) The attorneys for respondent argue that this statute and section 108 (subd 4, par [c], cl [iii]; subd 5, par [e], cl [iii]) of the Banking Law were both enacted on April 17, 1957 by chapter' 597 of the Laws of 1957 and chapter 599 of the Laws of 1957 and because the Banking Law does not use the words, "if it is referred to an attorney not a salaried employee” and the Personal Property Law does, that the 1957 Legislature intended to permit the recovery of attorney’s fees when using salaried employees.
It should be noted that the attorney for respondent is in error as to the date when section 108 (subd 4, par [c], cl [iii]) of the Banking Law was first enacted into law. The provision contained in section 108 (subd 4, par [c], cl [iii]) of the Banking Law was first enacted into law in 1937 by chapter 619 of the Laws of 1937 and appeared verbatim at the time in section 108 (subd 2, par [c], cl [2]) of the Banking Law. The provisions of subdivision 5 of section 413 of the Personal Property Law were enacted 20 years after the provision in section 108 (subd 4, par [c], cl [iii]) of the Banking Law was enacted. While certain sections of section 108 of the Banking Law were amended and modified on April 17, 1957, subdivisions 4 (par [c], cl [iii]) and 5 (par [e], cl [iii]) were not modified in any way.
Both statutes deal with the extension of consumer credit. They should be construed to achieve equality among all consumer creditors and debtors and avoid unjust discrimination. "(T)he courts have the power to declare unreasonably discrim *730 inatory provisions unconstitutional. ” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 147, pp 302, 303 and cases there cited in n 38).
A statute is void as class legislation whenever persons engaged in the same business are subject to different restrictions or received different privileges under the same conditions (People v Nadler, 1 Misc 2d 31).
However, "[a] statute should be construed, if possible, to uphold its constitutionality.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd c, p 321.)
“Thus, where an act is susceptible of two constructions, one of which will make it constitutional and the other unconstitutional, the former will be adopted.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, p 324.)
There is no rationale to a result in which a consumer who finances a purchase from Sears Roebuck is treated more advantageously than one who finances the same purchase from Chemical Bank; or the converse, that Chemical Bank should be treated more advantageously than Sears Roebuck. There is no evidence either in the legislative history of both statutes, the literature on the subject of consumer credit or the cases to justify such a result. The mere fact that the 1957 Legislature used different language than the 1937 Legislature does not necessarily mean that it did not intend to achieve the same result. In my opinion, by expressly stating in subdivision 5 of section 413 of the Personal Property Law that, “(t)he credit agreement may provide for the payment of attorney’s fees * * * if it is referred to an attorney not a salaried employee of the seller or holder for collection” (emphasis supplied), the 1957 Legislature clearly indicated what it understood the 1937 statute (Banking Law, § 108, subds 4, 5) to mean and more artfully delineated the limitations upon the collection of attorney’s fees in accordance with existing laws and ethical standards.
Finally, the impropriety of the bank’s practice is borne out by the futility of the argument that the bank collected less than it allocated to the expenses of running the legal collection department. While the bank submitted the amount of attorney’s fees actually collected it did not submit the amount that the default judgments entitled it to recover, a figure somewhere in excess of $800,000 over the two-year period, 1973, 1974. It is this latter figure which is relevant to the bank’s argument. The fact that the amount allegedly owed in *731 attorney’s fees was not collectible does not change the result that if the full amount had been collected it would have exceeded not only the amount paid in attorney’s salaries but all other expenses of the legal collection department which under no circumstances are properly classified as attorney’s fees. I therefore consider that entire argument irrelevant.
From the undisputed facts I find:
(a) that the bank has engaged and is engaging in the unauthorized practice of law in violation of section 495 of the Judiciary Law,,
(b) that the bank has engaged and is engaging in a misrepresentation by setting forth in its complaints against consumer debtors a specific item of recovery as attorney’s fees,
(c) that the bank has engaged and is engaging in conduct violative of section 491 of the Judiciary Law and has aided and abetted and has acted in concert with its salaried attorneys to engage in fee splitting in violation of canon 3 and disciplinary rule 3-102 of the Code of Professional Responsibility as approved by the American Bar Association and adopted by the New York State Bar Association,
(d) the bank engaged in usury by seeking to recover a charge in excess of the charges permitted by subdivisions 4 and 5 of Section 108 of the Banking Law.
Accordingly the respondent’s motion for summary judgment is denied and petitioner’s cross motion for summary judgment for the relief demanded in the petition is granted.

. (a) promissory consumer note
Undersigned agrees that if the Bank institutes action to enforce or collect this note or any other liability for non-payment at maturity, the actual expenditures for such action, including an attorney’s fee of 15% of the amount due on the note, shall be added thereto and will be paid by undersigned.
(b) retail installment credit agreement
G. Default * * * if any amount so becoming due and payable is referred for collection to an attorney, you agree to pay the reasonable fees of such attorney not to exceed 20% of such amount.
(c) revolving credit agreement
Attorney’s fees and costs. I agree that if you institute action to enforce and collect the unpaid balance or other amounts due hereunder for non-payment at maturity, expressed or declared, the actual expenditures for such action, including an attorney’s fee of 15% thereof shall be added thereto and will be paid by me.