Harry T. Nusbaum, J.
In this proceeding brought by the Attorney-General to enjoin and restrain the defendants from doing business in the State of New York, the petitioner sets forth four causes of action containing allegations which, if established, might indeed require the granting of the relief requested.
The defendant corporation by extensive advertising actively solicits the business of inventors and would-be inventors who pursue the American dream of "building a better mousetrap” or perhaps a more efficient safety pin that will bring them fame and fortune. The lure is undeniable. They are promised a complete professional service which will evaluate, protect, develop and help market their products and ideas. Of course, such services if and when provided must be paid for and I have no quarrel with this.
Unfortunately the benefits reaped by the inventors on the whole thus far appear to be miniscule when compared with the sums paid in advance for the promised development and marketing services. The promises of success, express or implied, have led, I am advised by the office of the Attorney-General, to a mounting crescendo of complaints. Whether the complaints are justified or merely the impatient mutterings of the hopeful waiting for their "boat to come in” I have no way of knowing, but I am concerned with what may be a violation of section 495 of the Judiciary Law.
In the instant motion, the petitioner seeks summary judgment on the fourth cause of action which alleges that respon *61 dents are engaged in the unlawful practice of law in violation of section 495 of the Judiciary Law.
This section provides, inter alla, "No corporation * * * shall * * * (d) furnish attorneys or counsel, nor (e) render legal services of any kind”. The nature of petitioner’s business as set forth in the petition and the other papers submitted herein is as follows: Lawrence Peska Associates, Inc. (LPA) is an invention development and marketing firm which, at the present time, for a cash fee and a 20% commission from the sale or licensing of an invention, contracts to develop and market the invention on behalf of its client. LPA formerly contracted for a cash fee and a 20% ownership interest.
As part of its contract to provide comprehensive services, LPA agrees to seek a patent for the inventor’s product by retaining a patent attorney. The attorney’s fees are paid solely by LPA and negotiated between LPA and the attorney. LPA formerly kept a list of 25 attorneys and at present is advertising for new patent attorneys. Respondents receive up to $1,750 for the services they provide. Of this amount, 25% is attributable to the preparation of a patent application. The actual fees paid to the attorneys "range between $75 and $100 per application.” This leads to the inescapable conclusion that respondents’ fees include over $300 to LPA itself for the preparation of a patent application. With respect to the prior purported joint venture contract this too is a violation. The company has collected from the subscribing inventors, its clients, over $4 million under this contract since it began operations three years ago. Of this sum, only $10,000 is attributable to its ownership of the invention, to wit, less than Vk of 1% of its gross income. Additionally, the attorneys were retained and had prepared the patent applications before the respondent had any ownership interest in the patent.
In view of the foregoing undisputed facts concerning the nature and practice of LPA’s business, the court is compelled to find that LPA has been engaged in the practice of law in violation of section 495 of the Judiciary Law. It is undisputable that the preparation of patent applications constitutes the practice of law in New York (People v O’Brien, 43 Misc 2d 1003; Matter of New York County Lawyers’ Assn. v Dacey, 28 AD2d 161; Sperry v Florida, 373 US 379, 383). While New York State does not have jurisdiction to regulate patent attorneys or patent agents registered with the United States Patent Office (People v Miller, 43 Misc 2d 853; Sperry v *62 Florida, supra) the State can control the unlawful practice of law by nonregistered practitioners such as LPA (People v O’Brien, supra). In the Sperry case (p 402) the court stated "Since patent practitioners are authorized to practice only before the Patent Office, the State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives.”
The manner in which LPA interferes in the attorney-client relationship does not control the result. Whether LPA has an ownership interest, retains and pays for the attorney or whether LPA supplies a referral list of attorneys, the violation remains the same. The purpose of section 495 is to prohibit all interference and possible conflict of interest in the attorney-client relationship (People v People’s Trust Co., 180 App Div 494; Matter of Co-operative Law Co., 198 NY 479). It is obvious to this court at least that attorneys who receive business regularly from LPA might not always act in the best interests of the inventors as opposed to the interests of LPA.
Further, the violation of section 495 (subd 1, par [e]) is clear. The fees collected here by LPA for patent application services far exceeds the costs to LPA for these services. Therefore, LPA is in fact receiving a fee for legal services. (See Matter of Thompson v Chemical Bank, 84 Misc 2d 721.)
Respondent’s contentions that their work does not constitute "legal work” since non-lawyers are permitted to do it is without merit. Patent agents are permitted to prepare applications even though this constitutes the practice of law, solely because they are authorized to do so by Federally supreme law. Defendant herein has no such authority. (Sperry v Florida, supra.) Therefore, State regulation of unlicensed laymen or corporations such as LPA that practice law is not preempted by Federal law. (Matter of Cowgill, 37 Ohio App 2d 121; Sperry v Florida, supra; Kelly v Washington, 302 US 1, 10; Savage v Jones, 225 US 501, 533.)
I have read the additional affidavits and memorandum of law submitted with my permission in opposition to the instant motion and am not persuaded that any real issues of fact have been raised which require a trial on this issue.
The solicitation of the public to partake of the services offered by the corporate defendant cannot be denied. That such services include the furnishing of attorneys or counsel and the rendering of legal services in violation of paragraphs *63 (d) and (e) of subdivision 1 and of section 495 of the Judiciary-Law is also clear.
The examples of allegedly similar operations which are not subjected to the Attorney-General’s scrutiny are not applicable or pertinent to the issue before me and will be found to be authorized by statute.
Accordingly, petitioner’s motion for summary judgment on the fourth cause of action is granted in accordance with the decision herein.