Richard Aronson, J.
This is a motion made by the respondents to dismiss the petition herein pursuant to CPLR 404 on the grounds that it fails to state facts sufficient to sustain this proceeding and because it fails to sustain jurisdiction of the subject matter of the proceeding in accordance with the requirements of the section of the Judiciary Law under which it is brought.
This proceeding was commenced against the respondents by the petitioner in his capacity as Administrative Judge of the Fifth Judicial District of the State of New York at the request of the Onondaga Neighborhood Legal Services, Inc. pursuant to section 217-a of the Judiciary Law which provides as follows:
"Vacating default judgments in certain cases
*932 "An administrative judge, presiding justice or judge in charge of the administration of any court, pursuant to his responsibility under section two hundred seventeen of this chapter, to insure the orderly administration and operation of justice in the courts within the area of his administrative responsibility and, subject to supervisory direction in administrative and operative matters by the appellate division or the presiding justice thereof, upon a proper showing that default judgments were obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities or where such default judgments were obtained in cases in which those defendants would be uniformly entitled to interpose a defense predicated upon but not limited to the foregoing defenses, and where such default judgments have been obtained in a number of instances deemed sufficient by such judge or justice to justify such action as set forth herein, upon appropriate notice to counsel for the respective parties, or to the parties themselves, may bring a proceeding to:
"1. vacate and set aside such judgments; or
"2. vacate and set aside all summonses and complaints presently on file which may be reasonably expected to lead to such default judgments; or
"3. issue a stay against marshals or sheriffs from executing to collect such judgments, from taking further steps of any kind toward the collection of such judgments and from paying out any funds over which they now have custody, possession or control in connection with default judgments heretofore recovered in that court; or
"4. decree restitution to the persons entitled thereto of all payments and other charges which have been collected under any default judgment, execution or summons issued out of said court; or
"5. decree such other and further relief as to the court may seem just and proper, provided, that nothing herein shall be deemed to restrict or limit the court in the exercise of any of the powers it otherwise possesses.
"The disposition of any proceeding so instituted shall be determined by a judge other than the administrative judge or presiding justice responsible for its initiation.”
Petitioner seeks the following relief: an order vacating and setting aside certain default judgments heretofore taken by *933 the respondents, Crystal, Manes & Rifken, attorneys for the respondent, First Trust & Deposit Company; an order directing the respondents to submit to the court by affidavit proof by direct evidence of the actual reasonable or necessary expenditures for the service of attorneys or to elect to waive judgment for attorneys’ fees and to take judgment for the remaining sums certain; an order staying all marshals and/or sheriffs who hold executions from enforcing the executions; an order enjoining the respondents from entering such judgments in the future, and finally, an order compelling the respondents to make restitution to the persons entitled thereto of all payments which have been collected on judgments which contain a sum for reasonable attorneys’ fees found to be in excess of actual reasonable and necessary expenditures for the services of attorneys.
After this proceeding was instituted by the petitioner an application by the Onondaga Neighborhood Legal Services, Inc. to appear amicus curiae was denied in the face of strenuous opposition by the respondent attorneys, it appearing that Onondaga Neighborhood Legal Services, Inc. was interested in the outcome of the proceeding. An unopposed application by the New York State Bankers Association to appear amicus curiae was granted.
The petitioner alleges as a first cause of action that the respondent, First Trust & Deposit Company, hereinafter referred to as the "Bank”, employs the services of the respondent, Crystal, Manes & Rifken, P. C., hereinafter referred to as the "attorneys”, to bring suit against debtors who have defaulted on obligations arising out of consumer credit transactions with the bank. During the argument of the motion the parties hereto stipulated that the proceeding encompasses not only consumer credit transactions but also all commercial transactions such as promissory notes, Master Charge agreements, line of credit agreements, commercial and business loans and the like, expressly excepting mortgages on real property.
As a second cause of action the petitioner alleges that the claim for attorneys’ fees contained in the complaints served by the attorneys is not a claim for "a sum certain” or for a sum which can by computation be made "certain” within the meaning of CPLR 3215 (subd [a]), and that the respondent’s attorneys have failed to apply to the court for a determination of the reasonableness of the amount of attorneys’ fees demanded in the complaints. Consequently, petitioner contends, *934 the clerks of the courts have entered judgments for the entire amount demanded in the complaints as and for attorneys’ fees without any proof of the reasonableness thereof.
In support of its motion to dismiss the proceeding, the respondent bank has submitted an affidavit by Philip E. Baker, one of its vice-presidents, in which he states that in the course of his duty to review individual delinquent accounts and process them with the respondent attorneys, he is familiar with the process of the taking of default judgments; that he reviewed the judgments set forth in the petition and found that, of the 45 causes of action upon which the judgments were based, 23 of them involved debtor’s installment promissory notes, each of which contained a provision whereby the debtor agreed to pay an attorney’s fee of 15% of the unpaid balance if the note were sued for collection. He alleges that each of these notes evidenced installment loans made by the bank pursuant to section 108 of the Banking Law, and that the amount of attorneys’ fees in each of the cases was equal to 15% of the unpaid balance outstanding on those notes.
He further states that 17 other causes of action were upon Master Charge agreements which in each instance contained a provision that the debtor agreed to pay an attorney’s fee of 20% of the unpaid balance if the indebtedness were sued for collection. Further, he states that two other causes of action were based upon loans made for commercial or business purposes, one of which was guaranteed by the United States Small Business Administration. That contained an agreement by the borrower that he would pay a reasonable attorney’s fee, and the other note contained a provision for payment of a reasonable attorney’s fee in the event the note was placed in suit. A fee of 3310% was charged by the attorneys.
The affidavit further states, and it is undisputed, that on January 18, 1973, the bank and the attorneys entered into a written agreement for legal services involved in the collection of delinquent accounts, which agreement in substance provided for payment of attorneys’ fees by the bank in accordance with the following formula:
(a) 3310% of the amount for open ended credit accounts (e.g., Master Charge, checking overdraft, line of credit), and
(b) 30% of the amount actually collected for other accounts, (e.g., personal installment loans, time sales contracts, & c.).
The agreement was subsequently amended to provide that the percentage would be reduced to 20% for amounts on any *935 individual account in excess of $5,000 up to $15,000, and to 15% for amounts in excess of $15,000. In addition to this obligation, the bank is required to and does pay a suit fee for each account which it places with the attorneys for collection.
Baker further states that pursuant to this arrangement the bank has never collected for attorneys’ fees from any judgment debtor an amount in excess of the sum it has actually paid to the attorneys; in fact, the bank in all cases is obligated to pay a larger collection fee than it takes judgment for against a debtor for the reason that the percentage imposed against the debtor is upon the unpaid balance whereas the percentage the bank must pay is applied against the amount collected which theoretically may include both the unpaid balance and the amount of the attorneys’ fees.
In his affidavit in support of the motion of the respondent, Crystal, Manes & Rifken, to dismiss, Sidney Manes, one of the respondents, states that, since January 1974, the firm of which he is a member has annually entered hundreds of judgments on behalf of the bank in cases where the debtors have defaulted, including many where an amount for attorneys’ fees was included as authorized by section 108 of the Banking Law. He alleges that at the time the judgments under attack were taken, no statute, court rule or other administrative mandate existed which required a showing or proof of legal services before a default judgment, which included a claim for attorneys’ fees, could be entered. He also states that in 40 of the 45 causes of action judgment could be entered, including an attorney’s fee, without the necessity of an inquest, and only five might require proof as to the reasonableness thereof.
The respondents urge that the petition should be dismissed for the reason that it fails to state any cause of action and for the further reason that the relief sought does not fall within the scope of section 217-a of the Judiciary Law.
Turning first to the latter ground, it is important to examine the legislative history of the statute. In 1972, prior to the enactment of the statute, Justice Thompson, the Administrative Judge of the Civil Court of New York, brought five proceedings to vacate a large number of default judgments entered in that court on a fraudulent or illegal basis (1972 Report of the Civil Court, pp 21-24). The improper activities included: (1) lack of service, (2) false nonmilitary affidavits, (3) violations of the long-arm statute (essentially failure of jurisdiction), (4) lack of qualification of the judgment creditor to do *936 business in New York, (5) fraudulent sales of defective merchandise, and (6) suit being brought against defendants who had already paid for the merchandise.
During the same period the New York regional office of the Federal Trade Commission held hearings which indicated that consumers were defaulting in actions in which they had meritorious defenses based on fraud or illegality.
According to the practice commentary by Richard A. Givens following section 217-a of the Judiciary Law (McKinney’s Cons Laws of NY, Book 29, Judiciary Law, § 217-a, 1976-1977 Pocket Part, p 87), that section is specific in covering fraud, unconscionability, or other illegality in the underlying transactions and states that it is applied where there is "a proper showing that default judgments were obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities”. These are the basic evils at which the section is aimed.
The primary issue presented herein is whether the allegations of illegality set forth in the petition or the tactics complained of are, in the context of the surrounding circumstances, the type of practice envisioned and contemplated by the drafters of section 217-a of the Judiciary Law. According to the statute, in order to sustain those allegations there must be a proper showing that the default judgments were obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities, or that such default judgments were obtained in cases in which those defendants would be uniformly .entitled to interpose a defense predicated upon, but not limited to, the foregoing defenses.
Further light is shed upon the intent of the drafters of the legislation in a letter by Mr. Givens dated March 2, 1973, in which he states that the bill "would apply solely to substantial matters going to the core of the transaction or to the methods used in obtaining the default judgment”.
In this proceeding we are concerned with whether the practice of contracting for the payment of attorneys’ fees in the event of default, and entering default judgments, including an amount for attorneys’ fees based on such contracts, is fraudulent and illegal, notwithstanding that such a practice has been openly followed for years and appears to be sanctioned by the express terms of statutes of this State and the decisions of its courts, including the Court of Appeals.
The sponsor of this proceeding in its memorandum relies *937 heavily upon Thompson v Chemical Bank (84 Misc 2d 721). The only similarity that the facts in that case bear to those in this matter is that both proceedings were brought under section 217-a of the Judiciary Law. Even the attorney for the petitioner concedes that fact. None of the violations found to have existed in that case are present here since no claim is made that the respondent bank has engaged in illegal fee-splitting, or has practiced law, or that it or its attorneys ignored prior Bar Association ethics opinions.
The petitioner would have the court find that the practice complained of, viz., collecting attorneys’ fees from debtors pursuant to the terms of a note or other evidence of indebtedness, without proof of the reasonableness thereof, falls within the purview of the statute. It is well settled that parties to a contract may adopt a liquidated damage clause that will provide compensation for damages anticipated to be incurred upon default (5 Williston, Contracts [3d ed], pp 637-642, 742-749). Also, damages may be liquidated in an agreement but only at such an amount which is reasonable. A term fixing an unreasonably large amount is void as a penalty (Uniform Commercial Code, § 2-718, subd 1).
It is significant that the attorneys’ fee provision is not against public policy. It is a creature of statute, and the Legislature has seen fit to sanction such provisions in seven separate sections of the Banking Law (§ 108, subd 4, par [c], cl [iii]; § 108, subd 5, par [e], cl [iii]; § 202, subd 4, par [c], cl [iii]; § 235, subd 8, par [4], cl [a], subcl [iii]; § 380, subd 2, par [b], cl [4], subcl [iii]; § 380, subd 2, cl [c] and § 453, subd 5, par [a], cl [2]). In addition there are at least three statutory authorizations of attorneys’ fees provisions in "consumer” contracts which set specific percentage limitations on fees; two of these statutes permit provisions for payment of attorneys’ fees not exceeding 20% of the amount due and the other permits provisions for up to 15% of the amount due (Personal Property Law, § 302, subd 7; § 413, subd 5; Banking Law, § 569, subd 2).
The courts of this State have consistently held that a provision for a reasonable attorneys’ fee contained in a promissory note is enforceable (Commercial Inv. Trust v Eskew, 126 Misc 114; Manufacturers & Traders Trust Co. v Franz, 46 AD2d 161; Franklin Nat. Bank of Long Is. v Bush Homes, 30 Misc 2d 473). In Equitable Lbr. Corp. v IPA Land Dev. Corp. (38 NY2d 516) which is the most recent and authoritative case *938 on the validity, interpretation and enforceability of contractual clauses for the payment of percentage attorneys’ fees, such a provision in a commercial sales contract was held to be enforceable, albeit proof as to reasonableness was essential. In National Bank of Westchester v Pisani (NYLJ, April 14, 1976, p 14, col 2), Justice Marbach, found among other matters, that the court could find 15% and 20% attorneys’ fees reasonable without proof.
According to section 217-a of the Judiciary Law a condition precedent to the commencement of this type of administrative proceeding is a proper showing that the practices of the judgment creditor or its attorneys were of the fraudulent or illegal nature described in the statute. In contrast to the illegalities found in the Chemical Bank proceeding, the only alleged illegality herein is the failure to prove entitlement to a certain amount for attorneys’ fees. As hereinabove pointed out, the right to same has been established by statute and upheld by the courts. No claim is made here that goes to the very core of the transaction such as a violation of the usury laws, fee-splitting or the unauthorized practice of this law, or even that the judgments themselves were illegally obtained.
Although the statute was enacted in 1973 and became effective in 1974, Chemical Bank is the only reported case wherein it has been invoked, although there is one other proceeding pending.
I am of the opinion and find that there has not been a proper showing as required by the statute that the default judgments which included a sum for attorneys’ fees were obtained by fraud, misrepresentation, illegality or the like, and for that reason the petition is dismissed. The radical nature of such a proceeding supports the view that the statute should only be invoked when the abuses complained of would, as in the Chemical Bank case, constitute a complete defense to an action brought against the defendant. In light of the statutory and decisional law hereinabove cited, it cannot be said that the debtors have any defense to the inclusion of attorneys’ fees in the actions brought upon the instruments upon which the actions are based. The drafters of the legislation never intended that section 217-a of the Judiciary Law should be the vehicle to test the viability of well established principles and practices of our judiciary system, especially when there is no allegation or proof that the underlying transactions were illegal or even colorable in nature.
*939 One matter that has surfaced as a result of this proceeding merits some attention since it relates to the practice that has developed in entering judgments for attorneys’ fees where the instrument sued upon contains an agreement that in the event of a default the debtor will pay a reasonable attorney’s fee. In some instances the attorneys themselves have fixed the fee and included it in the judgment.
I consider this to be an improper practice; therefore, hereafter in all such cases where the complaint alleges a cause of action for reasonable attorney’s fees, application must be made to the court by affidavit or by inquest to fix the amount of attorney’s fees before entering judgment therefor.
In view of this decision, it is unnecessary to meet some of the other issues raised herein.