OPINION OF THE COURT
Gerard M. Weisberg, J.
On this application to file a late claim pursuant to Court of Claims Act § 10 (6), we must address an issue which the parties state is apparently one of first impression before the New York courts: Must an insurer obligated to share defense *543 costs pay expenses attributable to work performed by the other carrier’s in-house counsel? We hold that it must and that the claim therefore appears to be meritorious.
Gateway Tire Corp. was insured by both claimant, the Travelers Insurance Company, and defendant, the State Insurance Fund. On or about October 31, 1988, Gateway was named as a defendant and third-party defendant in a suit brought by George and Betty Herrion. Both insurers acknowledged their obligations to defend and indemnify Gateway in this suit. Specifically, in a letter dated November 1, 1989, Michael F. Coyle, an attorney in the office of the general attorney of defendant, stated: "The State Insurance Fund acknowledges its co-insurer obligations pursuant to INA v Dayton Tool & Die Works, Inc., for the defense of Gateway Tire Corp. our mutual assured and third party defendant in the above captioned action.” The letter then goes on to say: "The State Insurance Fund agrees to share in the costs of defense of Gateway Tire Corp. It consents to the retaining of Gervais, deCicco & McCory for the defense of our mutual assured”.
Although not stated in the letter, defendant allegedly had a policy of not contributing to defense costs that were attributable to in-house counsel. The firm of Gervais, deCicco & McCory, as it turned out, was in-house counsel to Travelers.[1] After the Herrion action was settled, claimant sent defendant a statement showing the settlement amount and the costs of the Gervais attorneys attributable to defending the action. While the State Insurance Fund agreed to pay one half of the settlement, it was only then, allegedly, that it learned that Gervais et al., were in-house counsel. It therefore refused to pay one half of the defense costs generated by those attorneys and notified claimant of this in a letter dated March 26, 1991.
For the purposes of this motion, we will assume claimant’s cause of action for breach of contract accrued on that date. Pursuant to Court of Claims Act § 10 (4), it had to either file a claim or a notice of intention to file a claim within six months thereafter. It did neither necessitating the instant motion.
Addressing the factors specified in Court of Claims Act § 10 (6), claimant offers no excuse for failing to timely serve and file a claim. On the other hand, the State Insurance Fund had *544 notice of the underlying facts and an opportunity to investigate within six months of the accrual. It therefore will suffer no substantial prejudice if a late filing is allowed. Nor does claimant have another remedy.
This brings us to the only real issue in this motion: Does the proposed claim[2] have an appearance of merit? Defendant, viewing the matter solely as one of contract, argues that the "agreement to share defense costs is vitiated by the material and latent ambiguity in its terms.” Claimant, on the other hand, responds that aside from the underlying contract, there is a common-law obligation for coinsurers to share defense costs which include those attributable to in-house counsel.
The law is clear, and the parties do not dispute, that where, as here, there are two insurers who have both covered the same insured with respect to the same risk "both must contribute, pro rata, toward the payment of the cost of the settlement and legal fees and other expenses of the litigation.” (Federal Ins. Co. v Atlantic Natl. Ins. Co., 25 NY2d 71, 78-79.)[3] What is not clear is whether the phrase "legal fees and other expenses of litigation” includes the costs attributable to in-house counsel. While we and the parties have found no New York case law which has answered this question, our research discloses it has been addressed in other jurisdictions.
Thus, in Pittsburgh Plate Glass Co. v Fidelity & Cas. Co. (281 F2d 538), plaintiff’s casualty insurer wrongfully refused to defend. Plaintiff therefore defended itself using both in-house and outside counsel. After settling, it sued the insurer to recover all of these items. In ruling in the insured’s favor, the Third Circuit stated: "If Pittsburgh’s [in-house] attorneys had refrained from activity, the workload and consequently the fee of the [outside] attorneys necessarily would have been increased. There is no reason in law or in equity why the insurer should benefit from Pittsburgh’s choice to proceed with some of the work through its own legal department.” (Supra, at 542.)
*545 Pittsburgh (supra) has been followed by the Fifth Circuit in United States v Meyers (363 F2d 615), the United States District Court in Oregon in United States v State Farm Mut. Auto. Ins. Co. (245 F Supp 58) and in the United States District Court for the Southern District of New York in Stichman v Michigan Mut. Liab. Co. (220 F Supp 848).[4] Thus, all the cases which have addressed the question have concluded that where an insurer wrongfully refuses to defend, the insured may recover its defense costs, including those attributable to in-house counsel. Would New York follow this rule and extend it to a claim of contribution between coinsurers?
The concept of seeking reimbursement for in-house counsel is not unique to insurance law. Rather the issue arose early and often, first in civil rights cases and then in other areas of the law as well. Thus, in the following areas the Federal courts have held that successful litigants were entitled to recover attorneys’ fees even where in-house or publicly funded counsel were employed. (See, e.g., Blum v Stemson, 465 US 886 [Legal Aid Society]; Washington v Seattle School Dist. No. 1, 458 US 457 [government attorneys]; American Family Life Assur. Co. v Teasdale, 733 F2d 559 [Assistant Attorney General]; Crooker v United States Dept. of Treasury, 634 F2d 48 [pro se attorney]; National Treasury Empls. Union v Nixon, 521 F2d 317 [in-house counsel]; see generally, 42 USC § 1988.) Bound to heed this rule in Federal civil rights cases, the New York courts followed suit. (See, e.g., Matter of Humphrey v Gross, 135 AD2d 634; Matter of Rahmey v Blum, 95 AD2d 294.) Going further, however, even where not mandated by Federal law, the New York courts have awarded attorneys’ fees for in-house counsel in other areas of New York law. (See, e.g., Maplewood Mgt. v Best, 143 AD2d 978; Matter of Green-point Hosp. Community Bd. v New York City Health & Hosps. Corp., 114 AD2d 1028.) The only precedent to the contrary that we have located is Matter of Thompson v Chemical Bank (84 Misc 2d 721).
In Thompson (supra), Chemical Bank had loan documentation which provided for the recovery of attorneys’ fees as fixed percentage of the outstanding loan balance in default. It used in-house counsel to seek collection of these loans. However, without regard to the actual costs involved, it sought recovery *546 of this percentage in every case. This was held improper. The holding, however, was based on Banking Law § 108 which controlled. That statute provided that only actual attorneys’ fees could be collected. The court ruled that a fixed percentage was not an "actual” amount and that in-house counsel expenses were not attorneys’ fees.
This holding, however, was dictated by Banking Law § 108. Here, there is no analogous provision in the Insurance Law. Moreover, section 71.1 of the regulations promulgated pursuant to the Insurance Law defines "legal defense costs” as "allocated attorney and all other litigation expenses that can be separately identified as arising from the defense of a specific claim.” (11 NYCRR 71.1.) The term "fee” is not used.
Thus, all of the out-of-State cases which have addressed the issue have allowed insureds to recover defense costs attributable to in-house counsel and New York, while not having addressed the question, has allowed it in other areas of the law. Moreover, New York requires coinsurers to share defense costs. As was noted in the cases above, where an insured or an insurer hires or assigns an already hired employee to defend, it has incurred an expense just as surely as if it had hired outside counsel. (Pittsburgh Plate Glass Co. v Fidelity & Cas. Co., 281 F2d 538, supra.) We therefore conclude that New York will follow this rule and allow an insurer to recover its appropriate share of defense costs attributable to in-house counsel from its coinsurer. (See generally, 7C Appleman, Insurance Law and Practice § 4691.)
Lastly, viewing this matter strictly as one of contract law, defendant’s letter of November 1, 1989 is clearly ambiguous. While several interpretations are possible, it can be viewed as an acknowledgment by defendant of its obligation to share defense costs in general, and in particular if the Gervais firm was employed. It was. Since defendant drafted the letter, it must be construed against interpretations not in claimant’s favor. (Carlino v Lumbermens Mut. Cas. Co., 74 NY2d 350; see also, 16 Couch, Insurance § 62:145 [2d ed].)
Claimant’s proposed claim therefore has an appearance of merit at least within the meaning of Matter of Santana v New York State Thruway Auth. (92 Misc 2d 1). The State Insurance Fund being an entity over which we have jurisdiction (Commissioners of State Ins. Fund v Mathews & Sons Co., 131 AD2d 301), based on the majority of the factors and the totality of the circumstances, the motion is granted.

. Both sides referred to this firm as in-house counsel. Whether they were actually salaried employees of Travelers or independent contractors on a yearly retainer is unclear. However, we do not think this distinction affects the outcome of this motion.

. Although a proposed claim was not annexed to the papers (cf, Court of Claims Act § 10 [6]), the defendant did not raise this as an objection. Moreover, both parties apparently treated the notice of intention filed January 13, 1992 as the proposed claim. Under the circumstances, we will do the same.

. Whether the insurers must contribute pro rata or equally may well depend on the language of the underlying insurance policies. (Compare, Federal Ins. Co. v Cablevision Sys. Dev. Co., 836 F2d 54, with Federal Ins. Co. v Atlantic Natl. Ins. Co., 25 NY2d 71, supra.) Since the underlying policies have not been submitted to us, we offer no opinion on this question.

. While the last case was brought under the Federal court’s diversity jurisdiction and purported to apply to New York law, it cited no New York authority for this proposition.