## 19513

The STATE, Respondent, v. Linda COLLINGTON, Appellant

(192 S. E. (2d) 856)

*W. Newton Pough, Esq.,* of Orangeburg, *for the Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph C. Coleman, Dep. Atty. Gen.,* of Columbia, and *Julian S. Wolfe, Sol.,* of Orangeburg, *for Respondent,*

November 1, 1972.

*Per Curiam:*

The appellant, Linda Collington, was charged with murder of a new born infant, Baby Collington, on or about November 17, 1971. At the January 1972 term of court for Orangeburg

County she was convicted of manslaughter and now appeals from her conviction and resulting sentence.

In November 1971, appellant was a student at South Carolina State College in Orangeburg. On Friday, November 19th, a new born dead infant was found in a trash bin on the college campus by a garbage collector. The appellant, during the course of investigation, gave law enforcement officers a written statement wherein she admitted that on November 17th, at about midday, she had a baby in her room in the dormitory, which, according to her, was born dead. She stated that she kept the baby in her room until about 10 o'clock on the following morning, November 18th, when she carried it, in a shopping bag, to the trash container where it was found the following day.

Such written statement, upon the trial, was admitted in evidence over objection of appellant's retained counsel. She now contends that admission of such statement was prejudicially erroneous for two reasons. She urges that her constitutional rights were not protected and safeguarded in full compliance with the famous *Miranda* decision and that, accordingly, her written statement was not freely, understandingly, and voluntarily given. The trial court held an extensive hearing out of the presence of the jury as to the circumstances surrounding the giving of the statement by appellant and, after hearing all of the evidence offered by both the State and the appellant, found as a fact "beyond a reasonable doubt" that appellant had been accorded all procedural safeguards required by Miranda and that her statement was voluntarily given after she had been accorded such procedural safeguard. On this point we only need to say that we have reviewed the evidence and that His Honor's findings of fact are abundantly supported by the evidence.

Appellant also urges that her statement was inadmissible because the *corpus delicti* of the offense had not been established by evidence, aliunde such statement. In a homicide case the *corpus delicti* consists of two elements —death of a human being and the criminal act of another

causing death. Additionally, in an infanticide case it is necessary to prove that the infant was born alive. *State v. O'Neall,* 79 S. C. 571, 60 S. E. 1121; Annotation 159 A. L. R. 523, *et seq.* Here it is urged that there was a failure to prove the *corpus delicti* in that the evidence was allegedly insufficient to prove the birth alive of the infant.

The *corpus delicti* in a homicide case must be established by the best proof obtainable, but direct and positive evidence is not essential and such may be proved by presumptive or circumstantial evidence when that is the best obtainable. See cases collected in West's South Carolina Digest, Homicide, Key No. 228. In determining whether there was sufficient proof of the *corpus delicti,* we, of course, are not concerned with the weight of the evidence or the credibity of the witnesses, but rather with whether there was sufficient evidence to go to the jury tending to prove the *corpus delicti* beyond a reasonable doubt. *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769.

The evidence adduced by the State tending to prove the child was born alive was as follows. The first doctor to see the body shortly after it was discovered testified that the baby's mouth was stuffed full of paper, "either toilet tissue or Kleenex". He did not remove or closely examine such paper. The coroner viewed the child's body at the mortuary, observed the paper in the mouth of the infant, used his finger to feel it, and testified that the "paper was tightly stuffed in the mouth". On or about November 30th, the body of the infant, then badly degenerated, was exhumed and an autopsy performed by a pathologist. He testified that from his examination he believed that the child was born alive and breathed naturally, and had to be alive for at least a short time, his opinion being based on his examination of the lungs. He testified that both lungs were full of air, soft and spongy as a normal lung would be when full of air: that they floated on water as if full of air, and that microscopically the air was "uniformly throughout" the lungs. He further testified, however, to the effect that anywhere from a day on after death

bacteria would commence to form gases in the lungs which would give the same impression as air therein; that what he found in the lungs could have been bacteria produced gas instead of air; that there was not any way for him to specifically differentiate between bacterial gases and natural air in the lungs, and that with the degenerative state of the child he could not say with any degree of certainty that there was any air in the lungs of the child. He was still of the view, however, that, from his observation, there was some air, as opposed to bacteria produced gas, in the lungs and that most probably the child was born alive.

In *State v. O'Neall, supra,* 79 S. C. 571, 60 S. E. 1121, this Court quoted with approval from 1 Wharton's Criminal Law the following passages:

"In cases of infanticide it must be shown that the child was born alive, and for this purpose an independent circulation is necessary." * * * "But it must be proven that the child had been born in the world in a living state. The fact that it has breathed for a moment is not conclusive proof thereof."

A review of the cases in the annotation in 159 A.L.R. commencing at page 523, as well as other decisions, reflects that in infanticide cases the courts and the medical profession have apparently experienced considerable difficulty in determining and satisfactorily proving that a deceased infant was in fact born alive. The Wyoming case of *State v. Osmus,* 73 Wyo. 183, 276 P. (2d) 469, contains, *inter alia,* an interesting discussion as to the sufficiency of evidence to prove a live birth and states that the courts of England have struggled with the question for centuries. The court stated that neither the medical books nor the cases considered by the court have provided any satisfactory answer as to when "an independent circulation", as mentioned by Wharton, exists. The authorities, both legal and medical, seem to concede, as does even the testimony of the pathologist in this case, that the flotation test of the lungs is far from efficacious to prove with

any degree of conclusiveness or certainty whether or not a particular infant was born alive.

In Georgia and Kentucky the rule is that the State must prove that the child was "born alive and had an independent and separate existence from its mother", and proof that the baby breathed, without more, is insufficient to comply with the rule. *Montgomery v. State,* 202 Ga. 678, 44 S. E. (2d) 242; *Jackson v. Commonwealth,* 265 Ky. 295, 96 S. W. (2d) 1014.

In the present case, however, we need not decide whether the opinion of the pathologist, standing alone, would constitute sufficient proof that the infant was in fact born alive. We have additionally the testimony of the first physician who saw the child that its mouth was full of paper, and the testimony of the coroner that the baby's mouth was fully open and packed tightly with paper. Such evidence, aside from the opinion of the pathologist, supports the reasonable inference that the child was born alive or otherwise there would have been no reason to stuff its mouth full of paper. See *Bennett v. State,* (Wyo.), 377 P. (2d) 634.

We conclude that the evidence was sufficient to justify the inference that the baby here involved was in fact born alive and had an independent and separate existence from its mother. Hence, appellant's contention that there was failure of proof of this element of the *corpus delicti* is without merit.

Appellant next contends that there was not sufficient proof that the offense, if any, occurred in Orangeburg County. According to her own admission, she gave birth to the baby on the campus at State College in Orangeburg County and placed its body in a trash container on the campus where it was later discovered. This evidence is clearly sufficient to warrant the inference that the crime was committed in Orangeburg County.

Finally, it is urged that the State failed to carry the burden of proof beyond a reasonable doubt in the following particulars:

"(a) whether the baby was born alive; (b) who, was the mother of the child; (c) where and when the baby died; (d) the actual cause of death; and (e) how, when or by whom was the child placed in the trash bin."

In view of the evidentiary facts hereinabove already related, only particular (d) requires here any further comment. The record contains no expressed medical opinion as to the actual cause of death. The first doctor to see the dead infant testified to nothing bearing on the cause of death except that there were no marks of violence on the baby and he had no opinion as to whether the baby had been born dead or alive. As above noted, he did observe that the mouth was full of paper. The pathologist who performed the autopsy testified that due to the condition of the body he could not determine the cause of death and "That there was no obvious natural or unnatural cause of death". In brief, the only evidence tending to prove the actual cause of death and that such was a felonious one is the existence of the paper stuffed in the mouth of the baby. According to the coroner's testimony the baby's mouth was fully open and tightly stuffed with paper. The evidence as to causation likely could, and we think should, have been more fully developed than it was. But, in considering whether the court erred in not directing a verdict of not guilty, we are required to view all of the evidence in the light most favorable to the State. If there be any substantial evidence which reasonably tends to prove the guilt of the accused, or if such guilt may be fairly and logically deduced therefrom, it is the duty of the trial judge to submit the case to the jury. On a motion for a direction of verdict, the trial judge is concerned with the existence or nonexistence of evidence and not its weight, such being for the jury. These are elementary principles of criminal law in this jurisdiction. Viewing the evidence as to causation in the light of these principles and the other circumstances reflected by the evidence, we conclude that there existed sufficient substantial evidence to support the logical and reasonable inference that the death of the infant was caused by strangulation, as contended by the State.

In conclusion, we deem all of appellant's exceptions to be without merit and the judgment below is accordingly

Affirmed.

Moss, C. J., and LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.