STATE OF NEBRASKA, APPELLEE, v. CHARLES CASPER, APPELLANT.

219 N. W. 2d 226

Filed June 13, 1974. No. 39422.

Frank B. Morrison, Sr., and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant appeals from a sentence to life imprisonment for murder in the perpetration of a robbery. He contends the evidence was insufficient to establish the death of Joseph Armstrong, the victim, was a result of the robbery and that errors occurred in the admission of evidence.

The record shows the defendant spent the evening of April 27, 1973, with Gary Wilson and his wife, Sandra Wilson, at several bars in Omaha, Nebraska. When they left Johnny's Lounge, Joseph Armstrong joined the group. They then proceeded in the defendant's automobile to the home of Armstrong's sister where Armstrong procured two $100 bills which she had been keeping for him. At some time there was conversation

between Gary Wilson and the defendant concerning a plan to get Armstrong's $200.

The party then visited several bars in Council Bluffs, Iowa, and spent some time at Lightning's Club 500 in South Omaha. Eventually they drove to the Surfside Marina Club which is located north of Omaha and near the Missouri River. The club was closed but the parking lot was lighted.

The evidence is in conflict as to what happened at the Surfside Club but the jury could find that Gary Wilson and the defendant forced Armstrong to the ground and went through his clothing trying to find the $200. The defendant testified he searched Armstrong but could not find the money. Armstrong's keys and pocketknife were taken from him. The defendant testified Gary Wilson threatened to castrate Armstrong if he did not hand over the money. Armstrong tried to get away from the two men several times and eventually entered the river. The evidence is undisputed that when last seen Armstrong was in the river. Sandra Wilson, who had stayed in the automobile and was some distance away, heard a splash and a cry for help. She then heard the defendant ask Gary Wilson if he could swim. Armstrong was not seen again until his dead body was found floating downstream on May 8, 1973.

On the morning of April 28, 1973, Gary Wilson, Sandra Wilson, and Gary Tiemann, a brother of Sandra Wilson, returned to the Surfside Club and found the two $100 bills. They kept the money and divided it among themselves. Three or four days later the defendant gave Armstrong's knife and keys to Gary Tiemann.

An autopsy was performed on the body of Armstrong by Dr. Jerry Wilson Jones but the cause of death could not be determined from the post mortem examination. Dr. Jones testified there were no tests or findings which would establish conclusively whether a person found in the water under these circumstances had actually died

from drowning. He was allowed to testify over objection that his findings were consistent with drowning.

In a prosecution for homicide, the State may show by circumstantial evidence the cause of death was a criminal act of the defendant. Cryderman v. State, 101 Neb. 85, 161 N. W. 1045; Morris v. State, 109 Neb. 412, 191 N. W. 717.

The proof as to the cause of death in this case was circumstantial. The testimony of Dr. Jones alone did not establish the cause of death. Because of the other evidence, testimony that Armstrong could have died by drowning was relevant. The fact that Armstrong when last seen alive was in the river and his body was found in the river approximately 10 days later would permit an inference that his death was caused by drowning. The expert testimony that death by drowning was consistent with the autopsy findings, and the absence of evidence of other probable causes, together with the other evidence, was sufficient to permit the jury to find that Armstrong's death was caused by drowning.

The defendant argues the robbery was not the cause of Armstrong's death because the robbery, or attempted robbery, had been concluded at the time Armstrong entered the river. Although the efforts of Gary Wilson and the defendant to rob Armstrong had not been successful, the jury was not required to find the plan to rob Armstrong had been abandoned. Armstrong made several attempts to escape before he entered or was forced into the river. In a statement to the police, the defendant had said: "* * * we was threatening that we was going to take him out and throw him into the water, you know, * * * and the next thing that I knew, we started chasing him towards the river * * *." The jury could have found the robbery was still in progress at the time Armstrong entered the river.

Sandra Wilson was called as a witness by the State. She had been charged as an accessory after the fact and was clearly a hostile witness and uncooperative. She

had given a written statement to the police concerning the events on April 27 and 28, 1973, but it is apparent her testimony varied considerably from her earlier statement. On direct examination the State questioned her concerning her previous statement. Over objection, the State was allowed to inquire if, after she had viewed Armstrong's body at a funeral home, she had told Gary Wilson: " ' * * * that it was the man, and that he and Charles Casper had killed that man.' " It has long been the rule that a witness may be examined concerning prior inconsistent statements to show his testimony has operated as a surprise, to test his recollection, refresh his memory, induce him to change his testimony, or show the circumstances which induced the party to call him. Welton v. State, 171 Neb. 643, 107 N. W. 2d 394. See, also, State v. Fronning, 186 Neb. 463, 183 N. W. 2d 920. Under the circumstances in this case the ruling on the objection was not erroneous. See Ewing v. United States, 135 F. 2d 633.

The judgment of the District Court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

Section 28-401, R. S. Supp., 1973, provides: "Whoever shall * * * in the perpetration of or attempt to perpetrate any * * * robbery, * * * kill another; * * * shall be deemed guilty of murder in the first degree * * *."

The evidence, including the defendant's own testimony, established the attempted robbery. However, the evidence failed to establish that the defendant had *killed* the decedent.

The doctor who performed the autopsy reported that there was nothing to indicate the decedent had died of other than natural causes. There was no evidence of any trauma, externally or internally or on X-ray examination. The doctor could not state with medical certainty the cause of death of the decedent. He could not state that the decedent drowned, but he did testify that the findings were not inconsistent with a patient

who had died from drowning, even though there was no water in his lungs. The doctor testified that the findings were equally consistent with drowning, diabetic coma, and arteriosclerosis. The decedent was a known diabetic receiving insulin shots each morning. The time of death could not even be fixed within a period of several days. No one ever saw the decedent go into the river or saw him in the water except the defendant. The defendant's testimony denied any act or acts which caused decedent's death.

It might well be said that the evidence established that an attempted robbery occurred and that the victim of the attempted robbery died at some time within a few days thereafter, and that his death might have been connected with the attempted robbery. Only one of the three possible causes of death could be even remotely connected with the attempted robbery or with the defendant. On that evidence the defendant was convicted of first degree murder.

In Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539, we said: "Homicide corpus delicti is not established until it is proved that a human being is dead, and the death occurred as the result of the criminal agency of another. * * *." The State "must prove that * * * death was the result of a criminal act, and unless and until this is proved, it is presumed that death resulted from innocent, noncriminal causes. * * * Any fact or circumstance susceptible of two interpretations must be resolved most favorably to the accused."

While the State may show by circumstantial evidence that the cause of death was a criminal act of the defendant, the facts and circumstances tending to connect accused with the crime charged must be of such a conclusive nature as to exclude every reasonable hypothesis except that of his guilt of having killed the decedent in the perpetration or attempted perpetration of a robbery. State v. Sedlacek, 178 Neb. 322, 133 N. W. 2d 380.

Here the evidence is absolutely uncontradicted that

no human agency can determine what caused the decedent's death. All three equally probable causes of death may be innocent and noncriminal. Only one of the three possible causes might be either criminal or innocent. Yet the jury was permitted to speculate that death was caused by a criminal act of the defendant. The basis for that speculation rests on the fact that the defendant, one of a group of intoxicated persons, participated in an attempt to rob the decedent in an area near the Missouri River, and the decedent's body was found in the river several days later. The State's evidence indicated that the death might have resulted from drowning while fleeing from the defendant at the time of the attempted robbery.

"The burden of proving that a specific crime has been committed is not fulfilled by evidence that a crime probably occurred." State v. Addison, 191 Neb. 792, 217 N. W. 2d 468. "Suspicion or speculation may never justify a conviction." Reyes v. State, *supra.*

The evidence here does not support the conviction.