STATE OF NEBRASKA, APPELLEE, v. HARLEY KEETON, APPELLANT.

259 N. W. 2d 277

Filed November 9, 1977.  No. 41280.

Douglas E. Merz of Weaver, Beekman & Merz, for appellant.

Paul L. Douglas, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

Defendant, Harley Keeton, appeals his conviction for first-degree arson. He argues his conviction is contrary to the evidence and the law in that the evidence fails to show: (1) The fire was the result of arson; (2) the defendant intentionally set the fire; and (3) that a crime in fact had been committed. We affirm.

Defendant was charged with willfully, maliciously, and feloniously setting fire to a two-story frame dwelling house in Humboldt, Nebraska. A policeman testified when he drove past the house at 12:30 a.m. on September 28, 1976, there were no cars in front of it. Fifteen minutes later, when he again passed the house, he observed a 1969 or 1970 Chevrolet parked on the wrong side of the street, in front of the house. The car had a county 54 license plate. There was a small black and white dog sitting in the rear window.

The policeman was called to the scene of a fire at the house 20 minutes later. When he arrived he noticed a tan Chevrolet bearing county 54 license plates. There was a small black and white dog inside the car. He was "almost positive" this was the same car he observed earlier. When shown photographs of defendant's car, he stated it was the car he had seen on the night of the fire. When he saw the car the second time it had been moved, the engine was running, and the lights were on. He ob-

served a man whom he identified as the defendant walk from the house, which was unoccupied, and get into the car. When the defendant started to drive forward, the policeman stopped him and told him he could not drive over the fire hose. The policeman thought the defendant appeared to be confused.

The State Fire Marshal testified that, when he investigated the fire later that morning, he noticed the smell of gasoline where the fire had been. He gave the following opinion as to the origin of the fire: "It was started by flammable liquids poured on the side of the front of the house, underneath the porch, and it came down on the side of the house, down onto the floor, and it ignited and, the fire, the direction of the fire, on the floor, went up the side of the house and around the roof and on up to the peak."

The Fire Marshal interrogated the defendant later that day at the Humboldt police station. Defendant told him he could not sleep on the night of the fire, and had driven to Humboldt from his home in Table Rock. He was returning home and was about 4 miles from Humboldt when he heard the fire siren. He went back to Humboldt and watched the fire. When asked if he had set the fire, defendant replied that he could have but he didn't remember. This testimony was corroborated by the former chief of police of the City of Humboldt and a deputy state fire marshal, who were present at the questioning.

The chief of police testified he was present during the fire and noticed a strong smell of gasoline or some other petroleum product. The odor was strongest near the east side of the porch. He removed some wood fragments from the porch and sent them to the state criminalistics laboratory for analysis. The laboratory report reads in part: "From gas chromatographic examinations of the wood extracts from Q1, it was determined that a mixture of hydrocarbon residues were present.

These hydrocarbons were similar to partially burned gasoline residue.''

The deputy state fire marshal was present during the questioning of the defendant. He heard the defendant say that he could have started the fire but that he didn't remember because he suffered from memory lapses. He testified defendant gave inconsistent statements when asked whether he had been in Humboldt prior to the fire.

The State introduced a funnel and a siphoning hose into evidence. These were discovered in the back seat of the defendant's car during a consent search. The State Fire Marshal testified defendant denied having these items. The funnel and hose both smelled of gasoline. The Fire Marshal testified that defendant's shoes also smelled of gasoline.

Defendant testified he could not sleep on the night of the fire and decided to take a drive, as he often did. When he arrived at the county line about 3 miles from Table Rock and 4 miles from Humboldt, he heard the fire siren and drove into Humboldt. He went to the scene of the fire and got out of his car to watch. When he was leaving he encountered a policeman who told him he could not drive over the fire hose. Defendant was acquainted with the house. He had stayed there for a few days several years previously. Defendant admitted he had driven by the house about a dozen times during the past year.

Defendant denied making a statement he had been in Humboldt that night prior to the fire. He admitted he told the investigators he did not have a funnel or hose in his car. His explanation was he had used the funnel 3 or 4 days earlier to fill a lawnmower and had thrown it in the back seat and forgotten about it. He testified the rubber hose which he said was in the trunk of the car had been used a year previously to feed gas into the car. He admitted it was possible he had gasoline on his shoes as he had been working

on a pickup that afternoon. He denied he could have set the fire but that he didn't remember. He had been treated for blackout spells. A week or 10 days before the fire he woke up·in a driveway in Humboldt without knowing how he got there.

The record amply demonstrates a crime had been committed; the fire was the result of arson; and the evidence was sufficient to permit the jury to find the defendant was responsible for the act.

Intent is seldom capable of direct proof. It may, however, be inferred from the words and acts of the defendant, and from the facts and circumstances surrounding his conduct. The jurors were informed that before intent could be inferred from circumstantial evidence alone, it must be of such a character as to exclude every reasonable conclusion except that the defendant had the required intent, and if they had any reasonable doubt with respect to intent, they were required to find the defendant not guilty. The instruction given was No. 14.11 of the Nebraska Jury Instructions. It adequately submitted the question of intent to the jury.

The essential elements for conviction of arson are stated in Harms v. State, 147 Neb. 857, 25 N. W. 2d 287 (1946): "The corpus delicti in an arson case consists of two elements, the burning of the property and the criminal act of someone in causing the burning.

"In order to establish the corpus delicti in an arson case, it is necessary that the evidence disclose the burning of the property as charged, and that the burning was caused by the willful act of some person criminally responsible."

This case was proved by strong circumstantial evidence. In State v. Eickmeier, 187 Neb. 491, 191 N. W. 2d 815 (1971), we said: "To justify a conviction on circumstantial evidence it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence

beyond a reasonable doubt, and when taken together must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby, and inconsistent with any reasonable hypothesis of innocence.

"After a jury has considered the evidence in the light of the foregoing rule and returned a verdict of guilty, the verdict on appeal may not, as a matter of law, be set aside for insufficiency of the evidence if the evidence sustains some rational theory of guilt."

From the evidence summarized above, the jury could determine beyond a reasonable doubt that the fire was of an incendiary origin. The presence of gasoline or a similar petroleum product in a large enough quantity to produce the heavy odor detected on the front outside walls and floor of the dwelling gives rise to a strong inference that the fire was started by the willful act of some person. Although the State did not produce the instrument that ignited the blaze, the frequent impossibility of such proof is obvious. The jury was properly instructed on the rules. regarding circumstantial evidence. We find the evidence sufficient to sustain a rational theory of defendant's guilt.

The judgment is affirmed.

AFFIRMED.