STATE OF NEBRASKA, APPELLEE, v. LENA J. DOYLE, APPELLANT.

287 N. W. 2d 59

Filed January 3, 1980. No. 42677.

Stanley C. Goodwin and Colfer, Lyons, Wood, Malcom & Goodwin, for appellant.

Paul L. Douglas, Attorney General, and Ruth Anne E. Galter, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

The defendant, Lena J. Doyle, was charged in a two-count information with second degree murder in violation of section 28-402, R. R. S. 1943 (count I), and feloniously throwing away a dead human body in violation of section 28-1033, R. R. S. 1943 (count II). At the close of all the evidence, the State having rested, and the defendant having elected to put on no evidence, the court found that the State had failed as a matter of law to prove second degree murder and withdrew count I from consideration by the jury. Instead, the trial court instructed the jury on the crime of manslaughter. The jury returned a verdict of guilty on both the charges of manslaughter and feloniously throwing away a dead body. The defendant assigns as one of the errors the trial court's failure to sustain the defendant's motion to dismiss

as to count I. We agree with the defendant that the motion should have been sustained and accordingly reverse the action of the trial court in that regard.

The State offered evidence to show that in late July and early August of 1978, the defendant was observed by neighbors and relatives in Maywood, Nebraska, and from their observations concluded that the defendant was pregnant. One witness testified on behalf of the State that she had asked the defendant when her baby was due and the defendant gave a date of August 8th. The witnesses further testified that following August 5th defendant was again seen by various witnesses and in their opinion was no longer pregnant.

On August 9, 1978, pursuant to a search warrant, a dead human infant was found on the premises occupied by the defendant and her family. The body of the infant was examined by a pathologist on August 9, 1978, and he testified that the infant was at or near term. The pathologist further testified that in his opinion the infant had been born alive. The autopsy, however, disclosed that there was no evidence of either internal or external trauma. Furthermore, the pathologist could not state what was the cause of death.

At the conclusion of the State's case, the defendant moved for dismissal. The trial court overruled the motion and the defendant elected to put on no evidence and rested. The defendant again moved for a dismissal on the basis that there was insufficient evidence to establish guilt beyond a reasonable doubt. Following the motion and argument, several questions posed by the trial court indicate the difficulty the court was having with the evidence. The court asked, ''Do you see any evidence of killing here?'' to which the State's attorney replied: ''Principally as I indicate due to the decomposed, direct evidence no, as to the decomposed condition of that body it's impossible. As to expert testimony, as to

probabilities, there is, strangulation or suffocation.

"THE COURT: What circumstantial evidence do you find of the killing?

"MR. SCHRODER: Dr. Deters' testimony, as this being a probable cause of death.

"THE COURT: Would you amend that to say possible?

"MR. SCHRODER: Yes. * * *."

The trial court again overruled the motions to dismiss but, just prior to meeting with counsel to go over the instructions, advised counsel, "* * * I'm going to withdraw second degree murder and submit manslaughter, and, of course, the disposal of a dead body. * * * I just feel that there's been no showing of a killing in this case. There's a showing of a death, but no killing; no intentional killing."

The trial court then instructed the jury in part as follows: "On Count I of the information in this case, depending on the evidence, you could have found the defendant: a. Guilty of murder in the second degree, or b. Guilty of manslaughter, or c. Not guilty. However, the court has determined as a matter of law and you must accept as true that the state has failed to prove beyond a reasonable doubt that the defendant is guilty of murder in the second degree. Therefore, you shall then proceed to consider the lesser included offense of manslaughter." The court then instructed the jury on elements which the State must prove beyond a reasonable doubt in order to convict the defendant of the crime of manslaughter, including: "1. That the defendant, Lena J. Doyle, killed a newborn human being. 2. That she did so without malice, unintentionally, while Lena J. Doyle was in the commission of some unlawful act."

The court further instructed the jury with regard to the matter of the commission of an unlawful act as follows: "In this regard, you are instructed that the only unlawful act which you are to consider is that of endangering the health of a child as provided

by a statute of the state of Nebraska. * * * The material elements which the state must prove beyond a reasonable doubt in order for you to find the defendant guilty of this unlawful act are: 1. That the defendant had the care, custody or control of the child. 2. That the defendant: (a) Willfully or negligently caused or permitted the life of such child to be endangered. OR (b) Willfully or negligently caused or permitted the health of such child to be injured. OR (c) Willfully caused or permitted such child to be placed in such a situation that its life or health may have been endangered."

An examination of the record discloses that the trial court was absolutely correct when it determined that there was not sufficient evidence to establish a killing. At best the evidence, almost exclusively circumstantial in nature, disclosed that a child was born to the defendant and that the child died. The pathologist was unable to testify as to any cause of death and could not testify that the cause of death was not from natural causes. Obviously, the trial court had concluded that the State had failed to prove a killing beyond a reasonable doubt as the State was required to do. There is no doubt that a defendant may not be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the accused is charged. In Re Winship, 397 U. S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368. Evidence is sufficient to sustain a guilty verdict only when the jury could properly find guilt beyond a reasonable doubt. State v. Alcorn, 187 Neb. 854, 194 N. W. 2d 798.

The mere fact that a child is born alive and then dies is not sufficient evidence to convict a defendant beyond a reasonable doubt of having killed the child.

In addition, however, for all the reasons for which the trial court concluded it could not submit to the jury the issue of second degree murder, the court was compelled to reach the same conclusion with re-

gard to the charge of manslaughter in this case. The court correctly instructed the jury that in order for the defendant to be guilty of manslaughter, an unlawful act had to have been committed by the defendant in the course of which the infant was killed. The trial court was not able to discover any evidence introduced by the State upon which the jury could find beyond a reasonable doubt that the defendant had been engaged in some unlawful act in the course of which the infant was killed. The court attempted to fill that gap by instructing the jury on the provisions of section 38-116, R. R. S. 1943 (endangering the health of a child). However, the elements necessary to constitute a violation of that statute were likewise lacking in the evidence. There was no evidence offered by the State that had the defendant done something, which she did not do, the infant would have lived; nor that had she not done anything, which she did do, the infant would have lived. There was, in short, no evidence that the defendant had willfully or negligently caused or permitted the life of such child to be endangered or the health of such child to be injured, or permitted the child to be placed in such a situation that its life or health may have been endangered. One may speculate on that point, but speculation alone does not constitute evidence. Reyes v. State, 151 Neb. 636, 38 N. W. 2d 539. There was simply no testimony upon which the jury could have found the defendant guilty under section 38-116, R. R. S. 1943, beyond a reasonable doubt.

The most that could be said, as was said by the State, is that one who has a baby should not have the baby at home. There was, however, no evidence offered that had the child been born in a hospital rather than at home it would not have died. Likewise, there was no evidence that there was an opportunity for the defendant to get to a hospital before the child was born. The only evidence offered by the State was to the effect that a child was born, it

lived momentarily, and was thereafter found dead. That was not sufficient to submit a charge of manslaughter to the jury.

The traditional and prevailing view expressed by courts from other jurisdictions is that in a prosecution for killing a newly born baby it is incumbent upon the State to prove that the child was born alive and had an independent and separate existence apart from its mother and that the accused was the criminal agent causing the infant's death. Lane v. Com., 248 S. E. 2d 781 (Va., 1978). See, also, White v. State, 238 Ga. 224, 232 S. E. 2d 57; Jackson v. Commonwealth, 265 Ky. 295, 96 S. W. 2d 1014; People v. Hayner, 300 N. Y. 171, 90 N. E. 2d 23; State v. Collington, 259 So. Car. 446, 192 S. E. 2d 856.

In the recent case of State v. Klutts, 204 Neb. 616, 284 N. W. 2d 415, we reviewed our rules with regard to a criminal conviction based upon circumstantial evidence, saying, "Where circumstantial evidence is relied upon, the circumstances proven must relate directly to the guilt of the accused beyond all reasonable doubt in such a way as to exclude any other reasonable conclusion." To justify a conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proven by competent evidence beyond a reasonable doubt, and, when taken together, must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby and inconsistent with any other reasonable hypothesis of innocence. State v. Faircloth, 181 Neb. 333, 148 N. W. 2d 187. Any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused. State v. Klutts, *supra*.

In Reyes v. State, *supra*, we said, "[A] conviction should not be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which he finds himself, or the mere

fact that some unfavorable circumstances are not satisfactorily explained."

We believe an examination of this record fails to disclose how the jury could possibly find beyond a reasonable doubt that the defendant had violated section 38-116, R. R. S. 1943, or that she was the criminal agent causing the infant's death. In the absence of such evidence, the conviction cannot stand. The trial court should have sustained the defendant's motion to dismiss both the second degree murder and manslaughter charges, and it was error for the court not to do so. Accordingly, we reverse that portion of the court's ruling and remand said matter with instructions to dismiss Count I.

The evidence with regard to count II is somewhat different. Nevertheless, an examination of the record satisfies us that the circumstantial evidence adduced by the State with regard to count II was sufficient to permit the jury to find beyond a reasonable doubt that the defendant had feloniously disposed of a dead human body. After a jury has considered the evidence in light of our rules concerning circumstantial evidence and returned a verdict of guilty, the verdict on appeal may not, as a matter of law, be set aside for insufficiency of the evidence if the evidence sustained some rational theory of guilt. See, State v. Keeton, 199 Neb. 405, 259 N. W. 2d 277; State v. Sommers, 201 Neb. 809, 272 N. W. 2d 367. We have examined defendant's assignments of error insofar as they apply to count II and find each of them to be without merit.

Accordingly, the judgment of conviction on count I is reversed and the cause remanded with directions to dismiss, and the judgment on count II is affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED WITH
DIRECTIONS.

CLINTON, J., dissenting.

I dissent from the portion of the majority opinion

which reverses and dismisses the conviction for manslaughter. I believe the evidence is sufficient to have permitted the jury to find that the child died as a consequence of a willful act or negligent act of the defendant which endangered the life or health of the child, which acts or omissions are wrongful acts under the provisions of section 38-116, R. R. S. 1943.

The majority opinion does not, in my view, contain a fair statement of the evidence and the inferences which a jury could draw therefrom, but rather contains a statement of the court's own factual conclusions. As an appellate court it is not our function to draw conclusions in law cases.

In this case it was incumbent upon the State to prove beyond a reasonable doubt that (1) the child was born alive, and (2) the child died as a consequence of a willful act or negligent act of the defendant endangering the life or health of the baby.

The fact that the defendant gave birth to a male child, who was born alive during the night of August 5, is a permissible conclusion from the following evidence. The defendant was observed by several persons to have been pregnant as late as July 28 and 29 and August 1. One of those persons was a registered nurse with obstetrical experience and she gave her opinion that the defendant appeared to be about to deliver. On August 6, the defendant was observed to be no longer pregnant. On that day the nurse went to the Doyle home for the purpose of lending assistance to the mother and child. A comment by her about "the new arrival" was met with no response but she was admitted to the home. She at that time observed that the defendant was no longer pregnant but appeared to be pale and tired.

A later court-ordered examination of the defendant by a physician resulted in a positive expert opinion that the defendant had recently delivered.

During the night of August 5 (early morning of August 6), Ron Snider, a neighbor boy who lived

next door to the Doyle residence and who had done a good deal of babysitting with infants, became ill about 4 a.m., and had to go to the bathroom. The windows were open. He heard a baby cry and he looked out the window to the Doyle house. The light was on in what other testimony showed was the bedroom of Lena Doyle, the defendant. There also appeared to be a light on in the bathroom of the Doyle home. The crying went on for about 3 minutes. It was not the cry of Lena's 2-year-old child, but that of a small infant. He knew the difference because of his babysitting experience and having been around the small infants of relatives.

The pathologist who performed the autopsy on the body of the baby gave as his expert opinion that the child had been born alive. The basis of his opinion were flotation tests of the lungs as well as microscopic examination of those organs.

The conclusion that the infant's death was caused by willful acts or negligent acts endangering the baby's health or life must be arrived at circumstantially. This court and many others have held that the cause of death need not be established by direct evidence. It may be established circumstantially and by inference. The pertinent cases of this and other jurisdictions we will discuss after we have summarized the evidence on the issue.

In addition to the fact the baby was born alive, the pathological examination showed that it was a full-term healthy infant. External examination disclosed no abnormalities. The heart was normal. The internal organs were those of a completely normal infant. The brain was normal. There was no evidence of infection or inflammation in any part of the body which could have caused the child's death. The pathologist rendered his expert opinion that the autopsy disclosed *"no natural cause of death."*

The autopsy further disclosed that there was an al-

most complete absence of blood in the body of the infant. So little, in fact, that the pathologist had a hard time getting enough for a blood sample and that he had to obtain from the aorta.

The umbilical cord was untied. It did not appear to have been cut by an instrument for the end was ragged. It could have been torn apart by hand. If the cord is not tied, two things may happen. There may be bleeding from the body of the infant, or before severance the blood may pass from the placenta into the infant's body, causing sludging in the infant's cardiovascular system. It is a reasonable inference from the doctor's testimony that there was no sludging, but, because of the absence of blood in the cardiovascular system of the infant, there had been bleeding. The absence of blood in the body, he testified, ". . . is a pattern that I have seen in bleeding death from other causes. That's what one sees. You see decreased amounts of blood within the vascular system." He gave as his assumption that the absence of blood can only be explained by loss through the umbilical cord.

He stated that the umbilical cord would not be broken accidentally during birth. The portion of the cord remaining attached to the body was about 4 inches long. A normal cord is, on the average, about 15 inches long. Had the cord not been of normal length, the baby would not have developed normally. The placenta and the remaining portion of the cord were not found in the search of the premises which followed the discovery of the body.

The child's body was in a shallow, 6-inch grave with earth mounded over the body. The body itself was covered with a towel. Two sizable patches of human blood were found on the ground adjacent to the grave. Whether this was infant or adult blood could not be determined by scientific analysis. It is reasonably inferable that this blood came from the body of the child while the body lay on the ground

during the digging of the grave.

A considerable quantity of blood on the mattress of the defendant's bed was adult human blood, type O. Blood in the bathroom and on sanitary napkins found in the bathroom of the Doyle home was adult blood, type O.

The grave was located in a portion of the Doyle yard which was concealed from direct view by a garage and a junked vehicle.

The defendant was a mother of one other child who was in her custody. It may be concluded, therefore, that she was generally familiar with childbirth.

When questioned after the discovery of the child's body, the defendant denied that she had been pregnant and that she had given birth.

Guilty knowledge may be inferred from the defendant's denials as well as from the concealment and burying of the child. There was no good reason to hide the birth or deny the pregnancy if the defendant were not guilty of wrongdoing or if the baby had died of natural causes.

A jury could reasonably find from the above evidence that the infant bled to death as a result of the act or neglect of the defendant.

In a prosecution for homicide, the State may show by circumstantial evidence the cause of death was a criminal act of the defendant. State v. Casper, 192 Neb. 120, 219 N. W. 2d 226; United States v. Stabler, 490 F. 2d 345 (8th Cir., 1974); Hall v. State, 243 Ga. 207, 253 S. E. 2d 160; The People v. Ryan, 9 Ill. 2d 467, 138 N. E. 2d 516; State v. Collington, 259 So. Car. 446, 192 S. E. 2d 856.

In State v. Casper, *supra*, the deceased was subdued by two men and they took his billfold. He got away from them and escaped into the river and that was where he was last seen. Several days later his body was found in the river. I quote from the opinion: "An autopsy was performed on the body of

Armstrong by Dr. Jerry Wilson Jones but the cause of death could not be determined from the post mortem examination. Dr. Jones testified there were no tests or findings which would establish conclusively whether a person found in the water under these circumstances had actually died from drowning. He was allowed to testify over objection that his findings were consistent with drowning.''

In United States v. Stabler, *supra*, a human body was found in a burned automobile. It could not be identified. The alleged victim was missing. He had been last seen in the car in a comatose condition. There was no scientific or other evidence as to the cause of death of the body found in the car. The whole matter is summarized in the seventh syllabus as follows: ''Evidence that human body was found in burned car, that particular individual was last seen in the car and had not been seen in the community since the fire, that car was parked long enough for it to become cool and negate possibility that an operating defect caused the fire, and that the missing person did not smoke and was comatose when last seen was sufficient to warrant finding that the missing person was dead and that his death was caused by a criminal act.''

Hall v. State, *supra*, involved infanticide in circumstances similar to those here involved. The court held: ''Evidence that defendant gave birth to deceased child in toilet, that she placed child in trash can without determining whether child was alive or dead and subsequently buried child in her back yard and that defendant's children heard baby crying after defendant placed it in trash can was sufficient to convict defendant of murder of newly born baby.'' There was, in that case, no scientific or expert testimony on the cause of death.

In The People v. Ryan, supra, the defendant, a nurse, gave conflicting statements as to whether the baby was born alive. However, she wrapped it in a

towel and placed it in an overnight case. The next day she buried the body. One of the girls with whom she shared an apartment testified that on the night of the birth she heard the defendant crying and then get up and go to the bathroom. About 30 or 40 minutes later she thought she heard a baby cry.

The court discussed the testimony of the pathologist as follows: "Dr. Van Pernis, a pathologist, was called and testified that he performed an autopsy on the baby in question, which had been dead at least 24 hours and perhaps longer. The external appearance indicated it had been buried a longer time. The child was a full-term female, approximately eight pounds in weight and normal length. He also determined the presence of gas, actually air, in both lungs which were fully expanded. The presence of gas, he stated, could come from two main sources: It indicates that the body had recently been alive or that there is decay present by bacteria and other organisms which may produce gas. In his opinion the infant had been alive because the lungs were fully expanded, filling the chest cavity on both sides. He explained that ordinarily in a new-born baby which has not been alive, the lungs are collapsed and are in the middle of the chest leaving a considerable space between the lung tissues and the chest wall itself; that in the body under consideration there was no evidence any place in the lungs that there was any collapse of tissue. He determined that the umbilical cord was still present and that it had probably been tied with a black string-like material. He further testified that in his opinion death had occurred relatively soon after birth as the bones of the skull were overriding. It was his opinion that the child did live and breathe. On cross-examination he testified he could not determine with any degree of medical certainty how long the child had lived. Dr. Van Pernis did not give and was not asked if he was able to determine medically as to what was the cause of

death.'' The court held the evidence sufficient to permit the jury to find that the baby was born alive and that the child died by suffocation or neglect.

In State v. Collington, *supra*, a newborn infant was found dead in a trash bin. The defendant admitted she had given birth to the baby in her dormitory room, but she said it was born dead. I now quote from the opinion: ''The evidence adduced by the State tending to prove the child was born alive was as follows. The first doctor to see the body shortly after it was discovered testified that the baby's mouth was stuffed full of paper, 'either toilet tissue or Kleenex'. He did not remove or closely examine such paper. The coroner viewed the child's body at the mortuary, observed the paper in the mouth of the infant, used his finger to feel it, and testified that the 'paper was tightly stuffed in the mouth'. On or about November 30th, the body of the infant, then badly degenerated, was exhumed and an autopsy performed by a pathologist. He testified that from his examination he believed that the child was born alive and breathed naturally, and had to be alive for at least a short time, his opinion being based on his examination of the lungs. He testified that both lungs were full of air, soft and spongy as a normal lung would be when full of air: that they floated on water as if full of air, and that microscopically the air was 'uniformly throughout' the lungs. . . . The record contains no expressed medical opinion as to the actual cause of death.''

In each of the cases we have cited, there was an absence of *competent* direct evidence that the death of the victim was caused by the act of the defendant. In United States v. Stabler, *supra*, e.g., perhaps the victim died of a heart attack before the fire. In State v. Casper, *supra*, it was possible the cause was something other than drowning and the fact that the victim was chased into the water was not the cause of death. The circumstances, however, were suffi-

cient to permit the jury the inference of criminal causation. They are also in this case.

I find the majority opinion inconsistent in affirming the conviction for abandoning a dead human body in a place other than a regular place for burial under a death certificate, section 28-1033, R. R. S. 1943, while holding that the evidence is insufficient on the manslaughter charge. It is "possible" that some other member of the household "threw away or abandoned" the body. If the evidence is insufficient on the manslaughter charge, it is also on the abandonment charge as well, and the court ought to take note of the insufficiency of the evidence on its own motion as plain error in order to prevent injustice.

Of course, the evidence on both counts points to the defendant as the perpetrator.

There is nothing in this case to indicate that the child died from any cause other than bleeding to death as a result of defendant's act or neglect. The jury verdict should not be set aside.

BOSLAUGH, J., joins in this dissent.