OPINION OF THE COURT
Donald J. Mark, J.
The defendant was charged with the crime of manslaughter, first degree, in violation of Penal Law § 125.20 (2). She allegedly while under the influence of extreme emotional disturbance caused the death of her newborn male infant by asphyxiation by placing two wads of paper in his throat. During the trial of this action two issues surfaced which depended for their resolution upon People v Hayner (300 NY 171). The first was the application of the defendant for a trial order of dismissal, and the second was the instructions to the jury on the definition of live birth.
Since this case will be retried because of a deadlocked jury, and because of the dearth of case law in this area, it is felt that a written decision explaining the court’s rulings would be appropriate.
As has been indicated, the defendant based her application for a trial order of dismissal on People v Hayner (supra).
In that case the defendant confessed that he had strangled the newborn baby of his daughter with its umbilical cord immediately after its birth and after he had heard the child cry. This *555 confession was the only evidence of live birth except for the medical testimony. The Court of Appeals discounted the testimony of four medical experts that the child had been born alive and had a living existence separate and independent from the mother, because their opinions were based solely upon the fact that the child had breathed. That court in this regard stated (300 NY, at p 175): “The expansion of the lungs was of no great moment because the legal test of live birth — possession by the child of a separate circulation — made irrelevant the question whether the child had breathed or not”. The defendant’s conviction for murder was reversed because his confession, which as indicated was the only evidence of live birth absent the medical testimony, had not been corroborated.
Two physicians at this trial testified for the People that the male infant had been born alive because there was evidence of breathing. The defendant claimed that this was exactly the type of evidence of live birth ruled insufficient in People v Hayner (supra). However, because of additional evidence in this case, the motion for a trial order of dismissal was denied.
People v Hayner (supra) emphasized that some of the factors militating against live birth in that case were the absence of hemorrhage in the lungs and lung area, no hemorrhage in the skull or brain and nothing abnormal in the conjunctiva. Here, in contrast, the People’s medical experts testified to hemorrhage in the lungs and lung area, hemorrhage in the skull and brain, hemorrhage in the conjunctiva and bleeding in other parts of the child’s body. That opinion characterized the absence of hemorrhage as a strong circumstance on the side of the defendant since bleeding naturally follows the rupture of a blood vessel of a living person. The presence of hemorrhages and bleeding here must then be cogent evidence of live birth. That decision also placed emphasis upon the lack of foreign objects in the infant’s body. Again, in contrast, in this case two wads of paper were found in the infant’s throat. Thus, the objections accented in that case were dissipated by the additional medical evidence produced here.
There was evidence of breathing based upon the expansion of the child’s lungs in this case just as there was in People v Hayner (supra; see also, Lane v Commonwealth, 219 Va 509, 248 SE2d 781; White v State, 238 Ga 224, 232 SE2d 57; State v Collington, 259 SC 446,192 SE2d 856; People v Ryan, 9 Ill 2d 467,138 NE2d 516; People v Chavez, 77 Cal App 2d 621, 176 P2d 92). There were also other indicia of breathing present here. There was medical testimony that the infant’s lungs floated (State v Doyle, *556 205 Neb 234, 287 NW2d 59; State v Collington, supra; Logue v State, 198 Ga 672, 32 SE2d 397; Jackson v Commonwealth, 265 Ky 295, 96 SW2d 1014), that there was color in the lungs (Logue v State, supra; Jackson v Commonwealth, supra; State v Sogge, 36 ND 262, 161 NW 1022) and that the lungs were soft (State v Collington, supra). Generally, if respiration has been established, that also establishes an independent circulation (.People v Chavez, supra; Morgan v State, 148 Tenn 417, 256 SW 433), because oxygen breathed through the lungs is carried throughout the body by circulating blood (Homicide of Newborn — Proof of Live Birth, Ann., 65 ALR3d 413, 418).
A case somewhat similar to the instant one is State v Collington (supra), where a mother’s conviction of manslaughter for the death of her newborn infant was affirmed. The doctor and coroner both testified that the child’s mouth was stuffed full of paper, either toilet tissue or Kleenex. The pathologist testified the child was born alive and breathed naturally because both lungs were full of air, they were soft and spongy as normal lungs, they floated on water and air was uniformly diffused throughout the lungs. The court found that the testimony that the child breathed in conjunction with the testimony that the baby’s mouth was stuffed with paper constituted sufficient proof that the child had been born alive.
The medical testimony in the instant case provided proof of hemorrhage and bleeding not found in Hayner (300 NY 171, supra), proof of breathing in excess of that found in Hayner and proof of paper wads in the child’s throat unlike the absence of foreign objects found in Hayner. Therefore, there was sufficient evidence to satisfy the test of live birth formulated by the Court of Appeals to justify the denial of the application for a trial order of dismissal.
Resort was again had to People v Hayner (supra), for the court’s charge to the jury on the definition of live birth, because one of the defenses asserted was that the infant had been born dead.[1]
The definition of “live birth” is dependent upon the definition of “person”. The Federal Constitution does not define that word (Roe v Wade, 410 US 113, 158); Penal Law § 125.05 (1) does, stating: “ ‘Person,’ when referring to the victim of a homicide, means a human being who has been born and is alive.” Civil *557 cases decided subsequent to People v Hayner (supra) are not enlightening. The Court of Appeals in one case held that a child en ventra sa mere is not considered a person until it has seen the light of day (Endresz v Friedberg, 24 NY2d 478, 485), and in another that a child must be completely born alive before the rules of murder will protect it (Byrn v New York City Health & Hosps. Corp., 31 NY2d 194, 203, quoting Paton, Jurisprudence [3d ed], at 353-354). Since the Legislature is assumed to have known of existing judicial decisions in enacting amendatory legislation (People v McNair, 78 Misc 2d 341; McKinney’s Cons Laws of NY, Book 1, Statutes § 191), and since section 125.05 (1) was enacted after People v Hayner (supra) that case is still the law of this State.
The jury was instructed on this issue as follows: “According to the law, ‘person’ when referring to the victim of a homicide means a human being who has been born and is alive. According to the law, a child is born alive when it has been wholly expelled from the mother’s body and possessed or was capable of an existence by means of a circulation independent of the mother. This means that the child must have a living existence separate and distinct from its mother. The test of separate existence is whether the child is carrying on its being without the help of the mother’s circulation.”
The first sentence of this definition of live birth was derived from said section 125.05 (1); the last three sentences were almost verbatim quotes from different portions of the decision of People v Hayner (supra). The People expressed opposition to the last two sentences, arguing that the term “or was capable of” in the second sentence was inapposite to the language of the objectional sentences. The court experienced some dissatisfaction with the possible inconsistency.[2]
The various jurisdictions have developed three concepts of what constitutes a live birth. The first theory is that “life” is present when a child has reached that state of development where it is capable of living an independent life as a viable being, so that a child in the process of being born may be considered a “live” human being (Singleton v State, 33 Ala App 536, 35 So 2d 375; People v Chavez, supra). The second theory is that “life” is not present until the child has been completely expelled from the mother’s body and has attained a separate and independent existence (Logue v State, supra; Harris v State, 28 Tex App 308, 12 SW 1102). The third theory encompasses the *558 second theory and adds the requirement that a showing of independent circulation and/or respiration be made (Jackson v Commonwealth, supra; Morgan v State, supra).[3] *5
It is readily apparent that People v Hayner (300 NY 171, supra) adopted the third concept of live birth. Because that decision used the term “or was capable of”, however, the People would have the court construe live birth according to a hybrid combination of the first and second theories, i.e., the child must have been completely expelled from the mother’s body and be capable of living an independent life as a separate being. While this argument can be made with some logic, two reasons militate against its acceptance. The first is that this interpretation is completely contradicted by the court’s holding in that opinion that “ ‘The true test of separate existence * * * is * * * “whether the child is carrying on its being without the help of the mother’s circulation” ’ ” (300 NY 171, 174), coupled with the court’s refusal to accept the medical opinion that “The child was born alive and had a living existence separate and independent from its mother” (300 NY 171, 175). Obviously, a child could be capable of living an independent and separate life in the future, but still be unable, at the point of birth, to exist without the mother’s circulation. The second and more compelling reason is since in that case the infant had been born with no abnormalities and had “breathed” as evidenced by the expansion of its lungs, it was certainly capable of an independent existence, yet that court found there was a failure to prove live birth. Thus, it is clear that the People’s definition of live birth was not indorsed by the Court of Appeals.
Since the Court of Appeals embraced the third concept of live birth, the language “or was capable of” cannot be interpreted to negative this theory. The rules of statutory construction, as applied to judicial construction, support this conclusion. It is well settled that to effectuate legislative intent the conflicting provision of a statute may be ignored (People v Kates, 77 AD2d 417, 418, affd 53 NY2d 591; Matter of Luis R., 98 Misc 2d 994, 997; McKinney’s Cons Laws of NY, Book 1, Statutes §98), meaning that the term “or was capable of” was used in the same vein as “possessed”. Equally established is the rule that the word “or” and “and” in a statute may be construed interchangeable when necessary to effectuate legislative intent (Department of Welfare v Siebel, 6 NY2d 536, 545; Davis Constr. Corp. v *559 County of Suffolk, 95 AD2d 819, 820; McKinney’s Cons Laws of NY, Book 1, Statutes § 365), so the term “or was capable of” may be read “and was capable of”. This construction of course means that the separation of the two phrases by “or” in this situation was not the use of a disjunctive particle indicating an alternative (see, Matter of Buff v Board of Trustees, 5 NY2d 602, 606; People v Cubiotti, 4 Misc 2d 44, 46).
Accordingly, upon the retrial of this action the language “or was capable of” will be redacted from the court’s original charge on the definition of live birth; the other portions of the said instruction shall remain intact.

. There was medical testimony produced by the defendant which supported this claim. Because the jury could find that the child was stillborn at the time of the defendant’s act, the jury was charged on the crime of attempted manslaughter, first degree (see, People v Dlugash, 41 NY2d 725).

. The jury may have become aware of this apparent incongruity also because it requested to be reinstructed on this definition shortly after it began its deliberations.

. Whether the cases are attempting to further explain “separate and independent existence” or formulating a third standard mandating another element is unclear (Homicide of Newborn — Proof of Live Birth, Ann., 65 ALR3d 413, 417).