■ HAROLD ELLENBERG, Respondent-Appellant, v SAMUEL BRACH, Appellant-Respondent, et al., Defendants. — In an action, *inter alia,* for an injunction, in which a judgment was entered September 19, 1977, *inter alia,* enjoining defendant Brach from interfering with plaintiff's rights under an easement to landscape, defendant Brach appeals from so much of an order of the Supreme Court, Queens County (Leviss, J.), dated April 19, 1982, as granted plaintiff's application to hold him in comtempt of court for violating the terms of the judgment. Plaintiff cross-appeals from so much of the same order as, in effect,

limited the fine to be imposed to the amount spent by him in his landscaping endeavors in 1979. The appeals bring up for review so much of a further order of the same court, entered April 20, 1982, as upon reargument, adhered to the original determination. Appeals from the order dated April 19, 1982, dismissed. That order was superseded by the order granting reargument. Order entered April 20, 1982, modified, on the law, by adding thereto a provision that plaintiff is entitled to recover his actual losses, without being limited to the losses incurred in 1979. As so modified, order affirmed insofar as reviewed. Plaintiff is awarded one bill of $50 costs and disbursements. Plaintiff and defendants are neighbors in Queens County. Defendants' premises are improved, in part, with a butcher shop of which defendant Brach is part owner and operator. Adjacent to the rear of the butcher shop, and directly to the east of it, is a rectangular parcel of land, also owned by defendants. This parcel, which runs north and south, serves as a driveway and as a means of access to the rear of the shop. Immediately to the east of the driveway is another rectangular plot of land (the servient parcel), running in a north and south direction, also owned by defendants, but subject to an easement in plaintiff's favor. Plaintiff's parcel of land (the dominant parcel), improved by a two-story residence, lies adjacent to and immediately to the east of the servient parcel. An easement was created in 1941 which provided that the owner of plaintiff's parcel shall have the right of ingress and egress over the servient parcel and the right to landscape the servient parcel. The easement also provided that no buildings or structures would be erected on the parcel. Until 1974, the servient parcel was fully landscaped by plaintiff with trees, bushes and plants, including a thick hedge, approximately four feet high, along its edge and abutting the driveway parcel. The landscaping thus provided a buffer between the dominant parcel and the butcher shop with its driveway. In 1974, defendant Brach desired to widen his driveway by two feet to accommodate larger trucks. In October, 1974, although plaintiff had refused permission, Brach ripped out the hedges abutting the driveway, chopped down several trees, and bulldozed a portion of the servient parcel in order to go through with the driveway expansion. Heavy trucks rode over the parcel, so plaintiff found it impossible to maintain landscaping upon it. Plaintiff then commenced this action seeking damages, a declaration of his rights under the easement, and a permanent injunction against interference with the easement, and a permanent injunction against interference with the easement. By judgment entered September 19, 1977 in the Supreme Court, Queens County, it was declared, *inter alia,* that plaintiff "has an easement to landscape" the servient parcel. Defendants, "their agents, servants, employees, invitees and licensees", were "permanently enjoined from interfering with plaintiff's rights under the easement * * * and from interfering with, removing, destroying, driving over or disturbing any trees, shrubs, bushes, lawns or other plantings which plaintiff has placed or shall hereinafter place" upon the servient parcel. In the fall of 1978, plaintiff began to relandscape the servient parcel. No longer having the hedge and several trees, plaintiff purchased 14 railroad ties and placed them end to end along the portion of the servient parcel abutting the driveway. He also placed large wooden planters on the northwest and southwest corners. Plaintiff averred that the ties were laid to prevent encroachment upon the servient parcel by the delivery trucks using the driveway, as well as to hold the soil and plants. During the winter of 1978-1979, the railroad ties kept getting banged out of place by the truck traffic. Plaintiff secured the ties by inserting iron rods into them in order to anchor them. A few inches of iron protruded above the ties in order to discourage trucks from driving over them. An additional row of iron rods were driven into the ground behind the ties, and ribbons were tied

along the tops of the rods to insure visibility. In April, 1979, plaintiff began recultivation. This included planting 54 multiflora rose bushes behind the ties. On May 25, 1979, defendant Brach, claiming that the ties were "dangerous and hazardous" and "viola[tive of] the easement," employed a crew of workers and removed the ties and rods. Within a few days, trucks servicing the butcher shop began driving over the edge of the servient parcel and dissipating the new topsoil. On June 3, 1979 plaintiff again reset the railroad ties. On August 20, 1979, after plaintiff returned home from a lengthy vacation, he found that Brach had again removed the ties. By the fall of 1979, 40 of the rose bushes had been destroyed by truck traffic, and two of the planters had been shattered. Deep ruts had been driven into the soil, eroding the ground and causing drainage pooling. Cars from the butcher shop parked upon the easement parcel. Garbage barrels, trays and tallow cans were found lying upon the remaining plantings. On July 28, 1980, plaintiff moved to punish Brach for contempt. Brach, in opposition to the motion, contended that the ties and rods were not placed upon the servient parcel for landscaping purposes, but for the purpose of asserting ownership and excluding him from his land, and that the ties and rods were dangerous and hazardous. Special Term rejected these claims, finding Brach to be in contempt of court for violating the terms of the judgment. We agree. It has long been the New York rule that "as punishment for contempt involves, or may involve, not only loss of property but liberty, it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated" (*Ketchum v Edwards,* 153 NY 534, 539; *Pereira v Pereira,* 35 NY2d 301). In the case at bar, the injunction, *inter alia,* clearly forbade Brach, his licensees and invitees, from interfering with plaintiff's rights under the easement to landscape. A party subject to an injunction is required to take such reasonable measures as would render the decree effective (*Village of Great Neck Estates v Rose,* 279 App Div 671; *People ex rel. McGoldrick v Douglas,* 286 App Div 807; see, also, *Mayor of City of N. Y. v New York & Staten Is. Ferry Co.,* 64 NY 622, 624). In the case at bar, defendant Brach, by removing the ties and doing nothing to prevent his licensees and invitees from destroying plaintiff's plants and bushes, violated the injunction by failing to adopt measures effective to prevent this infringement, although such measures were within his power and duty (see *Village of Great Neck Estates v Rose, supra*). Brach knew or should have known from past experience that if he removed the ties which had replaced the hedges as a buffer, the trucks servicing his store would run over and destroy the soil and plants. If Brach was of the opinion that the ties and rods were dangerous and hazardous (and we note that these items situated entirely upon the servient parcel, would be dangerous and hazardous only to those trucks already in violation of the easement), it was his duty to adopt reasonable measures such as the construction of his own fence to protect the servient parcel (see *Village of Great Neck Estates v Rose, supra*). Brach's argument that he had no responsibility for the actions of the deliverymen utilizing his driveway for deliveries on his behalf is without merit, for, as previously noted, he had the duty and power to prevent their infringements, yet failed to do so. Plaintiff on his cross appeal argues that the court erred in limiting his recovery to "the amount spent by plaintiff in his landscaping endeavors in 1979", and argues, *inter alia,* that he is entitled to recover his actual damages, e.g., for the value of his labor in landscaping the parcel and the cost of restoration of the parcel. Where there is an actual loss or injury as a result of contemptuous conduct, the fine imposed must be sufficient to indemnify the aggrieved party (Judiciary Law, § 773; *State of New York v Unique Ideas,* 44 NY2d 345). Thus, plaintiff should be

allowed to submit proof of his actual losses directly attributable to Brach's contemptuous conduct, and should not be restricted to the amount spent for landscaping in 1979. The size of the award will, of course, be dependent upon the evidence adduced. We note, however, that a fine for civil contempt cannot include punitive damages, for such a fine "should be formulated not to punish an offender, but solely to compensate or indemnify * * * complainants" (*State of New York v Unique Ideas, supra,* p 349). Moreover, the plaintiff cannot recover legal costs and expenses as part of the fine. "Such items are recoverable only in those cases where there has been no actual damage" (*Harwood Dimensions & Mouldings v Consolidated Edison Co. of N.Y.,* 77 AD2d 644, 645; see Judiciary Law, § 773). "This rule is apparently based upon the theory that a fine in such case is fixed upon proof of actual damages sustained according to the rules of law which would apply in an action for such damages" (*Matter of Rothko,* 84 Misc 2d 830, 886, mod on other grounds 56 AD2d 499, affd 43 NY2d 305). As noted by this court in *Nickolopulos v Janoff* (268 App Div 829, 830): "Formerly, the amount of the fine in such case could include costs and expenses (Rev. Stat. of N.Y. [1829], part III, ch. VIII, tit. XIII, § 21); but the present section (Judiciary Law, § 773) does not authorize the inclusion of costs and expenses in the amount of the fine in a case where an actual loss or injury has been produced". Mangano, J. P., Gulotta, O'Connor and Bracken, JJ., concur.