■ In the Matter of GREENPOINT HOSPITAL COMMUNITY BOARD et al., Respondents, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants.—In an application by the petitioners, *inter alia,* to punish the appellants for contempt of court in failing to comply with an order of the Supreme Court, Kings County (Bellard, J.), dated July 27, 1982, in a proceeding pursuant to CPLR article 78, the appeal is from an order of the same court, dated December 1, 1983, which granted the application after a hearing.

Order modified, on the law, so as to delete so much of the order as requires the appellants to pay to petitioners the sum of $250. As so modified, order affirmed, without costs or disbursements.

The controversy in the instant case centers around the manner in which the New York City Health and Hospitals

Corporation (hereinafter HHC) conducted the closing of Greenpoint Hospital (hereinafter Greenpoint) and the opening of its replacement, the Woodhull Medical and Mental Health Center (hereinafter Woodhull). A dispute between HHC and the Greenpoint Hospital Community Board (hereinafter the Board) led to an order of Special Term (Bellard, J.), dated July 27, 1982, which embodied a decision of the court dated July 13, 1982, in which the Board was granted injunctive relief compelling HHC to have "meaningful consultations" with the Board concerning the phaseout of Greenpoint in accordance with New York City Health and Hospitals Corporation Act § 4 (11) (L 1969, ch 1016, McKinney's Uncons Laws of NY § 7384 [11]). More specifically, the court ordered meetings, at least on a weekly basis, so that the Board could "consider and advise" HHC on: the transfer of services from Greenpoint to Woodhull; the maintenance of services at Greenpoint until its closing; the closing of Greenpoint; and the opening of one or more satellite ambulatory facilities in the Greenpoint catchment area. HHC was ordered to provide the Board "with all necessary and relevant information". The court further ordered that until such time as a Woodhull Hospital Community Advisory Board was established, HHC's consultations with the Board would "encompass all aspects of the opening and establishment of services at Woodhull Hospital". Special Term emphasized that the consultations with the Board were extremely important and that HHC should not approach the meetings with an attitude that its plans are "fixed in granite and cannot be changed". The court then stated that while HHC did not have to accept the advice of the Board, it did have to give the Board's advice "every consideration and if not adopted to have the reasons why expressed by HHC".

On September 17, 1982 the Board brought the instant application claiming that HHC had failed to comply with the court's order. A hearing on the motion commenced on September 23, 1982 and continued intermittently until November 29, 1982. Based on extensive testimony and exhibits, which included tapes of meetings between the Board and HHC, the court found that HHC had violated the prior court directives by not engaging in meaningful consultations. It stated that in the two months following the court directives, the HHC showed a "cavalier disregard" of its obligations and the Board's rights. The court found that HHC simply developed its own phaseout plan and presented it at a time and in a manner so as to practically constitute a fait accompli so that the Board could not provide any meaningful input.

The evidence adduced at the hearing supports that conclusion. There were eight scheduled meetings between the date of the court's July 27 order and the bringing of the contempt application. At the first meeting only the executive director of Greenpoint appeared for HHC. He could provide little information concerning Woodhull. Some of the information he did provide concerning the transfer of staff members turned out to be inaccurate. At the next meeting, on August 5, 1982, the project director at Woodhull and the president of the professional corporation established by HHC appeared. However, they refused to discuss any issues concerning Woodhull. Members of the Board showed them the court order, but they still refused to reveal any information concerning Woodhull. The two did not come to the next two meetings and none of the Board's questions concerning Woodhull's opening was answered. On August 26, 1982, the project director was represented by an associate, who, at one point during the meeting, fell asleep. The associate refused to answer any questions, or even write them down so that answers could be provided at a later date. However, other representatives informed the Board of a tentative timetable which indicated that Woodhull would open on October 18, 1982. No information was provided concerning the hospital's budget or a service contract that Woodhull entered into with Downstate Medical Center. On September 2, 1982, members of the Board waited for about an hour and a half, but no HHC representatives appeared. On September 9, 1982, the project director denied the existence of any timetable for Woodhull's opening. However, one week later, the Board received a written timetable. Although the plan indicated that it was only a draft, the Board learned that the cancellation of elective surgery at Greenpoint had already been implemented pursuant to the plan, without notification to the Board. The plan also provided for a long interval between Greenpoint's closing and Woodhull's opening. No reason was given for not informing the Board.

During the hearing on the contempt application, HHC submitted a timetable for Greenpoint's phaseout and the opening of Woodhull. The court allowed the HHC plan to go into effect while the hearing continued, but only if HHC acted in strict compliance with the court's prior order to the satisfaction of the court. From that point on, HHC was more cooperative. Under direct orders from the court, the service contract with Downstate Medical Center and reports from a consulting firm hired by HHC were provided. HHC had previously denied their existence. At the hearing, Woodhull's proj-

ect director admitted that the opening date of October 18, 1982 had not been originally revealed to the Board, but explained that he felt no need to reveal that information because the date was tentative. However, minutes of a meeting that the project director had with his staff in August of 1982 revealed that he considered the October 18 opening date as "not negotiable" and ordered that all dates were to be "in-house not for public consumption".

Upon review of the testimony at the hearing and tapes of some of the meetings, which were presented to the court as exhibits, it is clear that HHC failed to comply with the July 27 order. Information was withheld and representatives of HHC with necessary information failed to appear at the meetings. On several occasions inaccurate information was given or the Board was falsely informed that certain requested information did not exist. Instead of discussing the timetable for Woodhull's opening with the Board, HHC set a fixed timetable and attempted to force it on the Board without discussion. Although HHC was more cooperative once the contempt application was brought, any compliance was clearly a result of the court's threat to prevent or delay the opening of Woodhull by injunction.

Under the circumstances of this case, the court's finding of contempt was not an abuse of discretion. HHC contends that it purged itself of any contempt when it performed acts required under the July 27 order after the contempt application was brought. However, by implementing a plan to open Woodhull without consulting the Board, HHC had irreparably impaired the Board's rights. The court found that HHC had only partially complied with its order. This partial compliance did not satisfy the court since it occurred only after the court gave specific directions at the hearing or threatened to enjoin an aspect of the transition from Greenpoint to Woodhull. Whether certain conduct constitutes contempt is usually a matter of discretion for the hearing court and here the court had a proper basis to find HHC in contempt (*Wides v Wides,* 96 AD2d 592).

Alternatively, HHC contends that the court's July 27 order was too vague to be followed and thus cannot be the subject of a contempt application (*see, Ketchum v Edwards,* 153 NY 534; *Ellenberg v Brach,* 88 AD2d 899). It bases its contention on that portion of the court's order directing the parties to have "meaningful consultations". While the term "meaningful consultations" may be vague when taken out of context, in the instant case the court clearly explained with

specificity what it meant. In its order, the court stated that meetings should be held weekly. All aspects of the phaseout and transfer of services from Greenpoint to Woodhull were to be discussed. HHC was ordered to provide all relevant information concerning Woodhull's opening and Greenpoint's closing until a Woodhull advisory board could be established. The court further ordered that if the Board's advice to HHC were not adopted, then HHC should explain its reasoning to the Board.

It is evident that the court's order was not vague and that HHC flagrantly violated it. HHC's claim that it had merely erroneously interpreted a vague order is belied by the facts. On at least two occasions it failed to send any representatives to a meeting. It withheld information, initially claiming that it was under no obligation to discuss the opening of Woodhull. Clearly, this violated the order. It repeatedly stated falsely that the information did not exist. In a number of instances the information was not revealed until the court threatened to enjoin HHC's plans. It is clear that HHC violated a specific order of the court and its claim of vagueness is without merit.

Prior to Special Term's order in the instant case holding the appellants in contempt Greenpoint was closed and Woodhull opened. A Woodhull advisory board was then established. The result was that the Greenpoint Board, the petitioner in the instant case, was no longer in existence (see, McKinney's Uncons Laws of NY § 7384 [11]). HHC claims that since the Board was terminated, the contempt application should have been abated. Special Term correctly rejected this argument. The Board was in existence when the contempt proceeding was brought and was not terminated until after the contemptuous conduct by HHC had already occurred. To consider the application moot at this point would sanction HHC's violation of a court order. Thus, Special Term correctly found HHC to be in contempt under Judiciary Law § 753.

The Board was entitled to counsel fees for the contempt application (see, Matter of Planning Bd. v Zoning Bd. of Appeals, 75 AD2d 686, 687). The fact that the Board was represented by a publicly funded legal services organization does not bar such an award (see, Matter of Johnson v Blum, 58 NY2d 454; Matter of Rahmey v Blum, 95 AD2d 294). However, since the Board is no longer in existence, it should not have been awarded the $250 fine imposed upon appellants and that portion of the court's order should be deleted.

Upon a review of the record we find HHC's other claims,

including the contention that it was denied a fair hearing, to be without merit. Mollen, P. J., Rubin, Lawrence and Kunzeman, JJ., concur.